RUSSELL STURGIS et al., Respondents, *v.* PAUL N. SPOFFORD, Appellant.

In the act of 1853 (ch. 467, § 29), providing for the election of commissioners of pilots, the word election was not used in any such sense as it is in the Constitution; or as the result of a choice by the ordinary mode of voting by the people. It is in legal effect an *appointment*, and comes within the meaning of *that* word, as used in the Constitution. The provisions of that act giving the appointment of such commissioners to the chamber of commerce, and the presidents of marine insurance companies, are not in conflict with the Constitution.

An act of congress upon a subject within its jurisdiction, but upon which there has been State legislation, does not have the same effect upon the latter as would its repeal. Such act merely indicates the intention of congress, from that time to assume the exercise of the powers con-

ferred by the federal Constitution. The State law becomes from that time inoperative but is not repealed; the repeal of the act of congress would leave the State law in full force.

It cannot be presumed that any rights or interest secured, or obligations incurred under it (the State law), were intended to be interfered with, and hence a penalty incurred under the State law before, the act of congress is passed, may be recovered afterward.

The statute (ch. 243, § 29 of 1857), giving to the commissioners of pilots a penalty of $100 against any "person employing a person to act as pilot not holding a license," does not authorize the recovery of but one penalty against a party who has employed an unlicensed pilot, although such employment was repeated for numerous ships.

(Argued April 5th; decided April 25th, 1871.)

APPEAL from a judgment of the General Term of the Supreme Court, in the first judicial district, affirming a judgment of the Special Term in favor of plaintiffs, for forty-six penalties of $100 each. (Reported below in 52 Barb., 436.)

This action was brought by the plaintiffs, as commissioners of pilots, to recover certain penalties given by the act of 1853 (chap. 467, § 29), regulating pilotage in the port of New York, for employing a person not holding a license from the plaintiffs, or under the laws of New Jersey, to act as pilot. The cause was tried by DAVIS, J., without a jury. It was claimed, and the court found, that the defendant employed one John Magin to pilot certain steamers and sailing vessels bound outward from the port of New York. That Magin, at the time held a license under the act of congress of 1852. That he held a license under the laws of this State passed in 1836. That he took a license under the board of commissioners' of pilots in 1853, and each year thereafter, until 1860. The plaintiffs claim that he was suspended by the board, April 10th, 1860, but continued to act as pilot, no pilot being appointed in his place until a new license was issued to him April 26th, 1865. In the meantime, he piloted the vessels in question. The plaintiffs were appointed commissioners under the act of 1853, chap. 467.

*Erastus Cooke,* for the appellants. The plaintiffs had no power to take away Magin's license. The question of title to

the office could not be tried in this collateral way. (13 Wend., 494; *People* v. *Tiernan*, 8 Abb., 362; *People* v. *Collins*, 7 John., 549; *Weeks* v. *Ellis*, 2 Barb., 321; 8 Paige, 428; *Greenleaf* v. *Low*, 4 Denio, 170; 5 Wend., 233; *Fowler* v. *Beebe*, 9 Mass., 231.) The pretended suspension could not take place until Magin's successor was appointed. (8 Abb., 363; *Reed* v. *The City of Buffalo*, 3 Keyes, 447.) The commissioners' of pilots claim to be public officers, and they having brought the action, their title is directly in issue. (*People* v. *Tiernan*, 8 Abb., 362; *People* v. *Hopson*, 1 Denio, 579; *Green* v. *Burk*, 23 Wend., 490; *Fowler* v. *Beebe*, 9 Mass., 234, 235.) An appointment to office is a judicial act. (*Wood* v. *Peake*, 8 John., 71; *Wildy* v. *Washburn*, 16 John., 49.) The power given by the federal Constitution to regulate commerce covers the whole subject of pilotage. (*Steamship Co.* v. *Joliffe*, 2 Wallace, 459; *Cooley* v. *Port Wardens of Phila.*, 12 How., 299.) When the power is once exercised by congress, it becomes exclusive. (*City of N. Y.*, v. *Miles*, 11 Peters, 158; *People* v. *Brooks*, 4 Denio, 477; *Brown* v. *State of Md.*, 12 Wheat., 419; *Gibbon* v. *Ogden*, 9 Wheat., 197; Passenger case, *Smith* v. *Turner*, 7 How., 392.) The repeal of a statute, giving a penalty, extinguishes the right to the penalty, even though a prosecution is pending. (*Butler* v. *Palmer*, 1 Hill., 325, 330, 332; *Joliffe case*, 2 Wallace, 450, 464, 465, 466; *Hartung* v. *The People*, 22 N. Y., 100, 101, 102; *Commonwealth* v. *Duane*, 1 Binney, 601; *Board of Trustees* v. *City of Chicago*, 14 Ill., 334; *Norris* v. *Crocker*, 13 How., U. S., 429.) The same result follows when the law expires by its own limitation, pending the appeal from a judgment. (*Yeaton* v. *United States*, 5 Cranch., 281; Schooner "Rachel," 6 Cranch., 329.)

*William Allen Butler*, for the respondents.

CHURCH, Ch. J. The judgment recovered in this action is for forty-six penalties of $100 each, in favor of the plaintiffs, as "commissioners of pilots," against the defendants' intestate, for employing an unlicensed pilot, as prescribed in the 29th section of chapter 243 of the Laws of 1857, which is

amendatory of the general act regulating the subject of pilotage of the port of New York. (Chap. 467 of the Laws of 1853.)

It is objected that the appointment of the plaintiffs, authorized by the act of 1853, is not in accordance with the Constitution, and that they therefore have no lawful *status* as public officers, and cannot maintain the action. This objection was not made in the court below, but as it is jurisdictional in its character, it may be taken at any time.

This court has affirmed a judgment recovered by the commissioners of pilots, appointed under the act in question, in one instance, and sustained a recovery in another based upon liabilities created by the act; but in neither case was the constitutional question raised, and they cannot be regarded as authoritative in support of the validity of the act. (*Commissioners of Pilots* v. *Clark*, 33 N. Y., 251; *Cisco* v. *Roberts*, 36 N. Y., 292.) The act of 1853 provides that three of the commissioners shall be elected by the members of the chamber of commerce, and the other two by the presidents and vice-presidents of the marine insurance companies of the city of New York represented in the board of underwriters of said city. The provisions of the Constitution bearing upon this subject are contained in section two of article ten, which, after prescribing the manner of electing or appointing county, city, town and village officers, whose election or appointment is not provided for in the Constitution, declares that " all other officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people *or appointed as the legislature may direct.*" Although the word " election " is used in the statute, it cannot be supposed that the legislature intended it in any such sense as that word is used in the Constitution or as the result of a choice by the ordinary mode of voting by the people. The mode prescribed by the statute for selecting these officers is, in legal effect, an appointment, and comes within the meaning of that word as used in the Constitution, and the misnomer of the legislature cannot change the real character of the act provided for.

The offices of commissioners of pilots had no existence at the time of the adoption of the Constitution of 1846, and there were no officers authorizéd by law existing at that time who exercised the same or similar functions. The power exercised by the legislature was derived from the last clause of section two above quoted.

Commissioners of pilots are officers whose offices were created by the legislature since the adoption of the Constitution, and by the language of the section they must be either elected by the people or appointed, as the legislature may direct. It is insisted that the power of appointment can only be conferred upon somebody or officer representing or responsible to the people. The language of the Constitution does not justify this position. The power is not restricted. I agree that express limitations are not necessary, but they may be implied. The provisions for organizing the executive, legislative and judicial departments of the government exclude any other mode as effectually as if negative words were used, and so of any other provisions. Legislation, inconsistent with affirmative provisions of the Constitution, cannot be tolerated. Otherwise that instrument might be subverted by indirection. This principle has no application in this case.

County, city, village and town officers, whose election or appointment is not provided for in the Constitution, are directed to be appointed by section two in a certain specified manner, but the framers of the Constitution carefully omitted any direction in the next clause of the section as to the manner of appointment of officers whose offices should be thereafter created. The · omission of any direction as to the appointment of such officers is significant of the intention of the framers and the people to leave the unrestricted power in the legislature. The inconsistency with the mode prescribed for appointing or electing the enumerated officers is one authorized by the express provision of the Constitution itself. These are neither county, city, village or town officers, but are officers of the State, and relate to the exercise of national

power in protecting commerce and providing means for averting the dangers of ocean navigation. The power has been conferred upon congress, but until its exercise by that body, each State exercises it for itself.

This act is not obnoxious to the objections made to the Metropolitan Police bill, as the officers created by it are not among those enumerated, nor do they absorb or interfere with the functions of any existing office. (*People* v. *Draper*, 15 N. Y., 532.)

It is also claimed that the legislation of congress has superseded the act in question, and all State legislation on this subject. It is doubtless true that the whole subject of pilotage is embraced in the power conferred upon congress by the Constitution of the United States, to regulate commerce with foreign nations, and among the several States; but until the exercise of this power by congress, it is competent for the States bordering upon the sea, to exercise it themselves. The jurisdiction of the States has been acquiesced in by the general government from its foundation, and has been expressly recognized by congress. (See act of 1789.)

The act of congress of 1852 (10 United States Statutes at Large, 61, 67) is claimed to have superseded the act of the State; but in *Steamship Co.* v. *Joliffe* (2 Wall., 450), it was held, by the Supreme Court of the United States, that this act applied only to pilots for the voyage, and not to port pilots, and did not affect State legislation as to the latter. (*Cisco* v *Roberts*, 36 N. Y., 262.)

The act of congress of August, 1866 (14 United States Statutes at Large, 228), is more comprehensive in its provisions, and seems to include pilotage in harbors as well as at sea. In February, 1867, this act was amended, so as in substance to exempt port pilotage from its operation, and leave to the State its former power of legislation. (14 United States Statutes at Large, 411.) The penalties for which this action was brought had been incurred before the act of congress of 1866 was passed, but the trial and judgment was afterward. The jurisdiction of congress becomes exclusive upon its

exercise, which precludes all State action and supersedes all State laws previously passed. Assuming that the act of 186 embraced port pilotage, it is insisted that the penalties, pre viously incurred under the State law, became extinguished and abrogated. It is a general rule that criminal offences created by statute cannot be prosecuted or punished after the statute is repealed. (*Hartung* v. *People*, 22 N. Y., 95, and cases there cited.) And this rule has been extended to *quasi* criminal prosecutions for penalties. (*Butler* v. *Palmer*, 1 Hill 330.) Although a forfeiture or penalty for the benefit of the party injured is regarded as a vested right in the nature of a satisfaction (*Palmer* v. *Conly*, 4 Denio, 374), if the statute in question had been repealed by the legislature of the State the penalties and all power to enforce them would have gone with the law.

The repeal of the statute would have obliterated the law and all rights of action given by it. (*Key* v. *Goodwin*, 4 Moore & Payne, 341, 351.) But I do not think the act of congress had the same effect as a repeal of the statute by the State itself. The act is not retrospective in terms. It indi cates an intention from that time to assume the exercise of the power conferred by the Constitution, and the State law became from that time inoperative; but it is not repealed, nor can it be presumed that any rights or interests secured or obli gations incurred under it were intended to be interfered with

The repeal of a statute indicates a change of policy on the part of the State upon the particular subject, and it would be inconsistent to enforce the provisions of an act, after the State had declared it to be unwise. In this case the propriety of the State law is not even impliedly questioned. The repeal of the act of congress would leave the State law in full force and the amendment of February, 1867, produced the same effect; and there is no sound reason for depriving the State of rights secured under the law before the interference of congress.

The only remaining question necessary to consider relates to the amount of the recovery. As before stated, the recovery

was for forty-six penalties of $100 each. The statute imposing the penalty reads as follows: "All persons employing a person to act as pilot, not holding a license under this act, or under the laws of the State of New Jersey, shall forfeit and pay to the 'board of commissioners of pilots' the sum of $100."

The act is general in its terms. It is the employment of an unlicensed pilot, for which the penalty of $100 is incurred. It does not say for each employment, nor for each offence, nor for each ship unlawfully piloted. Penal statutes are to be construed strictly, and the language will justify the construction that but a single penalty is incurred for all of the alleged unlawful acts of the party prior to the commencement of the action.

"All persons employing" are liable, whether the unlicensed person employed piloted one or fifty ships. It is still but an employment. (*Washburn* v. *McInroy*, 7 J. R., 134; *Tiffany* v. *Driggs*, 13 J. R., 252.) Prosecutions for aggregated penalties should not be encouraged. Penalties are often incurred inadvertently, or under a claim of right, and if the prosecution is promptly instituted for a single offence, it operates as a salutary warning to discontinue the practice, or acts complained of, while delay may be regarded as an acquiescence in the right of the party to perform the acts. The employment of McGinn as a pilot was claimed to be justifiable under the United States statute, and the alleged invalidity of the State act, and involved serious legal questions.

The plaintiffs delayed prosecution for two years, and then recovered nearly five thousand ($5,000) dollars, while an action for a single penalty would have been just as potent to settle the legal questions involved. It is a wholesome rule not to allow a recovery for aggregated penalties, unless the language of the statute clearly requires it. Under this rule the party prosecuted will have an opportunity to desist from doing the act complained of, and if he does not, he will knowingly incur all the hazards of repeated prosecutions.

The judgment is affirmed for $100, the amount of one penalty, and reversed as to the residue, without costs to either party in this court.

Affirmed for $100, reversed as to the residue.