WILLIAM GRIFFIN, Respondent, *v.* INTERURBAN STREET RAILWAY COMPANY, Appellant.

FRANK S. SCUDDER, Respondent, *v.* INTERURBAN STREET RAILWAY COMPANY, Appellant.

1. RAILROADS — TRANSFERS ON PAYMENT OF A SINGLE FARE, FROM ONE TO ANOTHER LEASED SURFACE RAILROAD MAY BE EXACTED FROM OPERATING COMPANY — RAILROAD LAW, §§ 78, 104. Section 78 of the Railroad Law (L. 1890, chap. 565, amd. L. 1892, ch. 676), providing that "any corporation owning or operating any railroad or railroad route within this state may contract with any other such corporation for the use of their respective roads or routes, etc., * * * and if such contract shall be a lease of any such road," certain formalities are to be observed in its execution, expressly refers to and includes in its terms corporations organized for the purpose of operating the lines of other railroad corporations under lease, and must be read in connection with section 104, providing for transfers from one road to another upon payment of a single

fare; when so read the latter section applies to lines leased by one or different corporations to another and operated by the lessee; in a proper case, therefore, if such transfers are demanded, the lessee is liable for the penalties provided for their refusal.

2. PENALTIES FOR REFUSAL OF TRANSFERS NOT CUMULATIVE. The penalties provided for are not cumulative; but one penalty can be recovered, and the bringing of an action must be regarded as a waiver of all previous penalties incurred.

*Griffin* v. *Interurban St. Ry. Co.*, 96 App. Div. 636, modified.

*Scudder* v. *Interurban St. Ry. Co.*, 96 App. Div. 340, modified.

(Argued October 17, 1904; decided November 29, 1904.)

APPEAL in each of the above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered August 22, 1904, which affirmed a determination of the Appellate Term of said Supreme Court affirming a judgment in favor of plaintiff entered upon a decision of the Municipal Court of the city of New York.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Paul D. Cravath, Charles F. Brown, Joseph P. Cotton, Jr.,* and *Henry A. Robinson* for appellant. There is no obligation to furnish free transfers between the lines in question because they are not both embraced in any contract entered into pursuant to section 78 of the Railroad Law. (*Roosa* v. *B. H. R. R. Co.*, 28 Misc. Rep. 387; *Mendoza* v. *M. S. Ry. Co.*, 48 App. Div. 62; *Minor* v. *E. R. R. Co.*, 171 N. Y. 566; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *Green* v. *Biddle*, 8 Wheat. 1; *Riggs* v. *Palmer*, 115 N. Y. 506; *Hadden* v. *Collector*, 5 Wall. 107; *Newell* v. *People*, 7 N. Y. 1; *B. R. Co.* v. *Sultzberger*, 157 U. S. 1.) In any event plaintiff can recover only one penalty of fifty dollars in this action as the Railroad Law does not give a right to the same person to recover accumulated penalties from the same company for successive refusals to transfer at the same point. (*Fisher* v. *N. Y. C. R. R. Co.*, 46 N. Y. 644; *Cox* v. *Paul*, 175 N. Y. 328; *Wilde* v. *N. Y. C. R. R. Co.*, 47 N. Y. 678; *Bissell*

v. *N. Y. C. R. R. Co.*, 67 Barb. 375 ; *Foote* v. *N. Y. C. & H. R. R. R. Co.*, 50 N. Y. 693 ; *Barker* v. *N. Y. C. & H. R. R. R. Co.*, 61 N. Y. 655 ; *Jones* v. *R. G. & El. Co.*, 7 App. Div. 474.)

*Harcourt Bull* for respondent. Section 104 of the Railroad Law was intended by the legislature to apply, and does apply, to the case of a lease by one railroad of the lines of another. (*De Grauw* v. *L. I. E. R. R. Co.*, 43 App. Div. 502 ; *Mendoza* v. *M. S. Ry. Co.*, 48 App. Div. 62 ; 51 App. Div. 430 ; *O'Reilly* v. *B. H. R. R. Co.*, 95 App. Div. 253 ; *Topham* v. *I. S. R. Co.*, 42 Misc. Rep. 503 ; *Roosa* v. *B. H. R. R. Co.*, 28 Misc. Rep. 387.) Section 104 of the Railroad Law, which gives a penalty for " every " failure to obey the law, justifies the judgment for four penalties in the action at bar. Section 104 is essentially different from the statutes which were under examination in cases where it has been held that penalties could not be accumulated and recovered in one or more actions. (*People* v. *N. Y. C. R. R. Co.*, 25 Barb. 199, 200 ; 13 N. Y. 78, 82 ; *Suydam* v. *Smith*, 52 N. Y. 383 ; *Grover* v. *Morris*, 73 N. Y. 473 ; *Suffolk County* v. *Shaw*, 21 App. Div. 146 ; *Cox* v. *I. M. Co.*, 65 App. Div. 508 ; *Topham* v. *I. S. Ry. Co.*, 89 N. Y. Supp. 298 ; *Fisher* v. *N. Y. C. R. R. Co.*, 46 N. Y. 644 ; *Jones* v. *R. G. & El. Co.*, 168 N. Y. 65 ; *Cox* v. *Paul*, 175 N. Y. 328.)

*Edward B. Whitney* and *Julius Henry Cohen* for parties interested in support of judgments.

Bartlett, J. · These actions were brought to recover penalties alleged to have been incurred by reason of defendant's refusal to transfer the plaintiffs, while passengers on its railway system, from one of its lines to another, as required by law. In the Griffin case the plaintiff seeks to recover $200, for four penalties of $50 each.

The plaintiff is in the piano business and engaged in tuning, repairing and regulating pianos, which employment requires him to go to New Jersey almost every day in the year. In June and July, 1903, he resided on Lenox avenue, in the city of New York, near 134th street. In going to New Jersey he

took the Lenox avenue line and transferred to the 125th street crosstown line. In coming from New Jersey he took the 125th street crosstown line and transferred to the Lenox avenue line. On each of said four occasions plaintiff paid to the conductor the single fare of five cents, requesting at the same time that a transfer be given him for the second line. On each occasion the transfer was refused and plaintiff was compelled to pay a second fare of five cents, after having stated all the facts to the conductor. These trips, so taken by the plaintiff, were in the prosecution of his business.

In the Scudder case the plaintiff seeks to recover $250, or five penalties of $50 each. In this case the lines involved are . the 125th street and Amsterdam avenue lines. Plaintiff is a minister of the gospel.

In June and July, 1903, he resided at the corner of 117th street and Amsterdam avenue. On June 29th, June 30th and July 1st, 1903, he made five continuous trips in the cars operated by the defendant on Amsterdam avenue and on 125th street, in the borough of Manhattan, in the city of New York. On each of said trips he made payment of the single fare and demanded that a transfer should be given to the plaintiff for the second line. In each case the transfer was refused and in each case the plaintiff was compelled to pay a second fare of five cents, after having stated all the facts to the conductor. The plaintiff was not riding for the purpose of obtaining a cause of action against the company, but in the prosecution of his profession.

There are two. leases, under the provisions of which the defendant company was *operating* the lines of a street surface railroad on 125th street, Lenox avenue and Amsterdam avenue, over which plaintiffs, Griffin and Scudder, made their continuous trips. One of these is the lease from the Third Avenue Railroad Company to the Metropolitan Street Railway Company made in April, 1900; the other is the lease from the Metropolitan Street Railway Company to the Interurban Street Railway Company, the defendant, made in April, 1902.

The only street surface railroad *owned* by the defendant

is a line of railroad at Mt. Vernon, wholly outside the city of
New York.

The first and important question involved in these cases is
whether present section 104 of the Railroad Law was intended
by the legislature to apply to the case of a lease by one rail-
road of the lines of another. This question has been litigated
in the courts below in a number of cases, and the judges, with
nearly a unanimous vote, have decided that section 104 of
the Railroad Law covers the case of a lease by one company
to another.

These litigations have resulted in a number of well-consid-
ered opinions expressing the majority view, and it would be
unnecessary at this time to restate the arguments that are
there so ably set forth, were it not for the fact that the
learned Appellate Division handed down no prevailing opin-
ions save a reference to its decisions in other cases. It, there-
fore, seems proper that a brief reference should be made to
the statutory argument.

In 1839 the legislature passed an act "authorizing railroad
companies to contract with each other." (Laws of 1839,
chapter 218, p. 195.) This act contained a single section
reading as follows : " It shall be lawful hereafter for any rail-
road corporation to contract with any other railroad corpo-
ration for the use of their respective roads, and thereafter to
use the same in such manner as may be prescribed in such
contract. But nothing in this act contained shall authorize
the road of any railroad corporation, to be used by any other
railroad corporation, in a manner inconsistent with the provi-
sions of the charter of the corporation whose railroad is to be
used under such contract."

Inasmuch as the General Railroad Law of 1850 (Laws of
1850, chapter 140) did not, in terms, authorize the leasing of
one railroad to another, it was a mooted question whether such
power existed.

In *Woodruff* v. *Erie Railway Co.* (93 N. Y. 609, 616) this
court said, referring to the act of 1839 : " This act has never
been repealed, and has been held by this court to confer power

upon railroad corporations, not only to acquire, but also to transfer to other railroad corporations, by lease, the exclusive right to use and enjoy the property and privileges of the lessor in such contract. (*Fisher* v. *N. Y. C. & H R. R. R. Co.*, 46 N. Y. 644; *People* v. *Albany & Vt. R. R. Co.*, 77 N. Y. 232; *Troy & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.*, 86 N. Y. 107.)"

This case was decided in November, 1883. It will be observed that from 1839 to 1883, continuously, the power to lease existed.

In 1884 the legislature passed an act " to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages." (Laws of 1884, chapter 252, pp. 309, 314.) Section 15 of this act reads as follows: " It shall be lawful for any street surface railroad company or companies to lease, or to transfer its or their right, subject to all its or their obligations in respect thereof, to run upon or to use any portion of its or their railroad tracks to any other street surface railroad company authorized to run upon such route, upon such terms as may be agreed upon by a majority of the respective boards of directors thereof," etc.

In 1885 the legislature passed an act " authorizing street surface railroad companies to contract with each other, and providing for a proper system of transfer of passengers." (Laws of 1885, chapter 305, p. 525.) The material portions of the above act are as follows : " Section 1. It shall be lawful hereafter for any street surface railroad company, or any corporation *owning or operating* a street surface railroad or railroad route, to contract with any other such company or corporation for the use of their respective roads or routes or any portion thereof, subject to the provisions, restrictions and conditions hereinafter stated, and thereafter to use or to permit the use of the same in such manner as may be prescribed in such contract. (Remainder of section not material.) Section 2. The directors of the companies may enter into such a *lease or contract* under the corporate seal of such company, such

lease or agreement prescribing the terms and conditions
thereof." Section 3 provides for lease or agreement to be
submitted to vote of stockholders, vote to be taken by ballot,
lease to be filed and recorded. " Section 4. Each and every
company entering into any contract under the power conferred
by this act shall carry or permit any other party to such con-
tract to carry between any two points on the railroads or
portions thereof embraced within such contract, any passenger
desiring to make one continuous trip between such points for
one single fare not higher than the fare lawfully chargeable by
either of such companies for an adult passenger; and each and
every such company shall, upon demand and without extra
charge, give to each passenger paying one single fare a trans-
fer entitling such passenger to one continuous trip to any point
or any portion of any railroad embraced within such contract,
to the end that the public convenience may be promoted by
the operation of the railroads embraced within such contract
to the extent of their inclusion therein substantially as a single
railroad with a single rate of fare. For every refusal to com-
ply with the requirements of this section the company so
refusing, and having contracted as aforesaid, shall forfeit to
the aggrieved party the sum of fifty dollars, which may be
recovered in any court of competent jurisdiction. This act
shall not apply to cities having less than eight hundred thou-
sand population." Section 5 repealed all acts and parts of acts,
inconsistent with the provisions of this act.

In 1889 the legislature passed an act to amend chapter 305
of the Laws of 1885. (Laws of 1889, chapter 532, p. 730.)
This amendment related to section three of the act and per-
mitted it to stand, adding thereto provisions authorizing the
abandonment of part of a route and providing therefor in
detail.

On May 1st, 1891, the Railroad Law went into effect.
(Chapter 565 of the Laws of 1890.) The law of 1889 was
substantially embraced in section 78 of the new revision,
while the provision of the Railroad Law of 1890, against the
leasing of parallel lines was continued and made general by

section 80. The first section of the act of 1885 was continued as section 103; the third section as section 104, while the fourth section establishing the public right of free transfer was continued substantially in section 105.

In 1892 the legislature passed an act "to amend the Railroad Law." (Laws of 1892, chapter 676, p. 1382.) The changes made in this revision seem to have resulted in confusion and misunderstanding in judicial opinions and the briefs of counsel. The limitation referring to cities of eight hundred thousand population or over was stricken out. Sections 103 and 104 which provided, respectively, that corporations may lease or contract with each other for use of road and for the submission of such contract to the vote of stockholders, were repealed and substantially consolidated with section 78, which reads as follows (Laws 1893, ch. 433, § 2, amending § 78): "Any railroad corporation or any corporation owning or operating any railroad or railroad route within this state, may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract. Such contract may provide for the exchange or guarantee of the stock and bonds of either of such corporations by the other and shall be executed by the contracting corporations under the corporate seal of each corporation, *and if such contract shall be a lease of any such road and for a longer period than one year*, such contract shall not be binding or valid unless approved by the votes of stockholders owning at least two-thirds of the stock of each corporation which is represented and voted upon in person or by proxy at a meeting called separately for that purpose upon a notice stating the time, place and object of the meeting, served at least thirty days previously upon each stockholder personally, or mailed to him at his post-office address, and also published at least once a week, for four weeks successively, in some newspaper printed in the city, town or county where such corporation has its principal office, and there shall be indorsed upon the contract the certificate of the secretaries of the respective

corporations under the seals thereof, to the effect that the same has been approved by such votes of the stockholders, and the contract shall be executed in duplicate and filed in the offices where the certificates of incorporation of the contracting corporations are filed. The road of a corporation cannot be used under any such contract in a manner inconsistent with the provisions of law applicable to its use by the corporation owning the same at the time of the execution of the contract. Such contract shall be executed by the corporations, parties thereto, and proved and acknowledged in such manner as to entitle the same to be recorded in the office of the clerk or register of each county through or into which the road so to be used shall run. Nothing in this section shall apply to any lease in existence prior to May 1, 1891."

The new section 103 was introduced, dealing with the abandonment of part of route which is not material at this time. Old section 105 (§ 4 of Laws of 1885, ch. 305, already quoted), which dealt with the subject of contracting corporations to carry passengers for one fare and fixing a penalty for a violation of that duty, was moved up and renumbered section 104, with slight verbal changes, and reads as follows: "Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party. The provisions of this

section shall only apply to railroads wholly within the limits of any one incorporated city or village."

It is quite manifest from this review of the legislation bearing on the controversy, that present section 104 of the Railroad Law covers leases duly executed between street surface railroad companies and particularly the leases now under review.

It is obvious that the language of present section 104, "Every such corporation entering into such contract," etc., that the word "such" in that connection, refers to "any railroad corporation or any corporation owning or operating any railroad or railroad route within this state," which is the language of section 78 as amended.

It is claimed in this connection by the appellants that section 78 of the Railroad Law can only mean the roads or routes which the corporations respectively own, and does not apply to a corporation organized for the purpose of operating the lines of other railroad companies under lease.

Section 78 in express terms refers to any railroad corporation, "or any corporation owning or operating" any railroad or railroad route, within this state, may contract, etc. No argument seems necessary in view of the positive provisions of the Railroad Law. Sections 78 and 104 must be read together.

In some of the cases in the lower courts, in construing section 104 in regard to the liability of companies under lease to grant transfers to passengers, the meaning of the words in that connection, "to the end that the public convenience may be promoted by the operation of railroads embraced in such contract substantially as a single railroad with a single rate of fare," have been construed as a legislative intimation that certain transfers might be demanded that would not be required in seeking to promote the public convenience.

In the cases before us this language establishes the propriety of the transfers demanded.

We are of opinion that the transfer in each case was improperly refused and the defendant incurred the penalty provided by section 104 of the Railroad Law.

There is a second question in these cases that was not orally argued, but is discussed in the briefs of counsel which is as follows : Can a plaintiff, seeking to recover penalties under section 104 of the Railroad Law, join in his complaint more than one penalty ?

The provision of section 104 of the Railroad Law, relating to this subject, reads as follows : " *For every refusal.* to comply with the requirements of this section, the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

It is no doubt the rule to be deduced from the decisions of this court that no action for cumulative penalties is permissible unless it is clear from the language of the act inflicting the penalty that it was the intention of the legislature to provide a penalty for each and every violation of the statute.

In *People* v. *New York Central R. R. Co.* (13 N. Y. 78) this court allowed cumulative penalties under section 39 of the General Railroad Act of 1850 for sundry omissions to ring a bell or sound a steam whistle on engines upon approaching and crossing a highway. The statute in that case contained the words " for every neglect."

In *Suydam* v. *Smith* (52 N. Y. 383) cumulative penalties were allowed where a statute contained the words " for each offense." In that case Judge RAPALLO (p. 388) distinguished the case of *Fisher* v. *N. Y. C. & H. R. R. R. Co.* (46 N. Y. 644), pointing out that the act there construed did not contain words indicating that the legislature intended to permit a recovery for each offense.

In *Sturgis* v. *Spofford* (45 N. Y. 446) a cumulative recovery was disallowed, the legislative intent not appearing in the language of the statute.

In *Grover* v. *Morris* (73 N. Y. 473) a cumulative recovery was permitted. The offense was the sale of tickets in an illegal lottery. Each sale of a ticket was visited with a penalty ; and it was held that it was proper to unite in a single action claims to recover back moneys paid on several separate purchases.

Cumulative recoveries have not been permitted in two

recent decisions in this court, where the legislative intention was not to be found in the statute under construction. (*Jones* v. *Rochester Gas & Electric Co.*, 168 N. Y. 65; *Cox* v. *Paul,* 175 N. Y. 328.)

Referring once more to the language of section 104 of the Railroad Law, imposing the penalty, we find the single sentence in which it is contained opening with the words "For every refusal to comply."

It is quite obvious that the legislative intention to permit the recovery of cumulative penalties for refusals of the defendant to comply with the provisions of the Railroad Law in regard to the transfer of passengers, is as clearly manifested as in any of the cases cited.

Notwithstanding this fact a majority of my brethren are of opinion that while the rule for the recovery of cumulative penalties, as already adverted to, is firmly established by the earlier decisions of this court, yet the changed conditions in the modern life of great cities render its modification imperative.

There have been presented at the bar of this court, civil and criminal cases where the aggregate penalties sought to be recovered have amounted to enormous and well-nigh appalling sums by reason of plaintiffs permitting a long period to elapse before beginning actions. Actions of this nature have become highly speculative and present a phase of litigation that ought not to be encouraged.

The court is of opinion that if cumulative recoveries are to be permitted, the legislature should state its intention in so many words; that a more definite form of statement be substituted for the words hitherto deemed sufficient.

We intend no reflection upon the plaintiffs in the cases now under consideration, but are dealing with a great abuse which demands immediate correction.

A sound public policy requires that only one penalty should be recovered in a single action, and that the institution of an action for a penalty is to be regarded as a waiver of all previous penalties incurred.

29

It follows that, in each of the actions before us, the judgment should be modified and reduced so as to permit a recovery for one penalty only, without costs to either party.

Cullen, Ch. J., Haight, Martin, Vann and Werner, JJ., concur; Gray, J., not sitting.

Judgment accordingly.