PEOPLE v. KOSTER.

(Supreme Court, Appellate Division, First Department.   November 22, 1907.)

**1. ADULTERATION—MILK—SALE.**

A dealer, who sold milk in cans after having taken from them about two quarts of cream and then filling the same with milk from other cans from which the same quantity of cream had been taken, sold adulterated milk, within Agricultural Law, Laws 1893, pp. 660, 661, c. 338, §§ 20, 22, defining adulterated milk as milk from which any part of the cream has been removed; and where he sold it as milk from which the cream had not been taken he was liable to the penalty imposed, though the milk in other respects complied with the requirements of the law and was in fact wholesome.

**2. SAME—PENALTY.**

Under Agricultural Law, Laws 1893, p. 666, c. 338, § 37, providing that, where the violation of the act consists of the sale of any prohibited article, the sale of each of several packages shall constitute a separate violation, etc., one selling adulterated milk is liable in one action to cumulative penalties where he is guilty of a series of violations.

Appeal from Trial Term.

Action by the people of the state of New York against Anton Koster. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

See 97 N. Y. Supp. 829.

Argued before PATTERSON, P. J., and INGRAHAM, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

C. L. Andrus, for appellant.
A. L. Kellogg, for the People.

SCOTT, J.   Appeal by defendant from a judgment for penalties for selling adulterated milk, and from order denying motion for new trial. There is no serious question as to the facts. The defendant is a milk dealer in the city of New York, and has a creamery and two receiving stations in Delaware county. He collected the milk at his creamery, and had it shipped to New York, where he sold it in cans. It was the habit of his employés, in the morning prior to each shipment, to take from each can at the creamery about two quarts of cream, and then to fill up the can with milk from other cans from which the same quantity of cream had thus been taken. The evidence showed, upon two days, 25 separate and distinct sales to as many individuals, to whom were sold in all 36 separate cans of skimmed milk. Many more violations were charged in the complaint, but only the number above stated were proven. The evidence justified the belief that the defendant knew all about what his employés were doing, and on this appeal he does not claim ignorance of that fact on his part, although he does claim ignorance of the law.

The defendant's acts were precisely within the letter of the agricultural law. Section 22 of that law (Laws 1893, p. 661, c. 338) provides that:

"No person shall sell or exchange or expose for sale or exchange * * * any * * * adulterated or unwholesome milk," etc.

And section 20 of the same act provides that:

"The term 'adulterated milk' when so used [i. e., in the act] means:  *  *  *
(5) Milk from which any part of the cream has been removed.  *  *  *  All
adulterated milk shall be deemed unclean, unhealthy, impure and unwhole-
some."

Thus it clearly appears that the defendant sold milk declared by law
to be adulterated and unwholesome. It was testified to by a chemist
called by plaintiff that the milk sold by defendant came up in other
respects to the requirements of the law; that is, that it contained no
more than 88 per cent. of water, and the requisite percentage of solids
and fats. And he also testified that such milk was in fact wholesome,
and not deleterious.

The appellant claims that in so far as the act prohibits the sale of
wholesome milk, merely because it has been deprived of some of its
richness, it is unconstitutional; and he seizes upon a sentence in the
prevailing opinion by Judge Vann, in People v. Bowen, 182 N. Y. 1–10,
74 N. E. 489, which said:

"The courts have not yet held that the Legislature have power to prohibit
the sale of milk that is wholesome, even if it is not up to standard, provided
it is sold for what it actually is, and not as pure milk. If offered for sale
as milk simply, the presumption is that it is offered as pure milk, and when
so sold, without making it known in any way that it is not pure, the Legis-
lature may inflict a penalty and make the sale a crime, unless the milk
has such positive and negative qualities as in its judgment pure milk should
have."

The opinion goes on to show that the act is aimed as well at fraud
in the sale of milk as at unwholesomeness. Whether the milk, after
the cream had been taken from it, was or was not wholesome, it is
evident that the defendant was guilty of fraud towards his customers,
for there is nothing to show that he ever sold it as milk from which
the cream had been taken. He says that he sold it as "standard" milk.
The statute contains no definition of "standard" milk, and it is evident
that all the defendant means is that he sold it as milk having the pre-
scribed percentage of water, solids, and fat.

The defendant objects that he should not have been subjected to
more than one, or, at most, two penalties, and cites to us Griffen v.
I. S. R. R. Co., 179 N. Y. 438, 72 N. E. 513, Id., 180 N. Y. 539, 72 N.
E. 1142, U. S. Condensed Milk Co. v. Smith, 116 App. Div. 15, 101 N.
Y. Supp. 129, and other cases, in which a recovery of what are termed
cumulative penalties has been disallowed. Each one of these cases has
turned in great measure upon the language of the particular act under
which the penalties were sought to be recovered, and none of them have
gone so far as to say that a judgment for more than one penalty would
not be allowed if the Legislature had clearly indicated an intention that
such a recovery might be had. The language of section 37 of the ag-
ricultural law is very comprehensive and precise, and in our opinion
expressly provides for the collection of more than one penalty in a sin-
gle action. It provides that:

"Every person violating any of the provisions of the agricultural law shall
forfeit to the people of the state of New York the sum of not less than fifty
dollars and not more than one hundred dollars for the first violation, and not
less than one hundred dollars or more than two hundred dollars for the sec-

ond and each subsequent violation. * * * When the violation consists of the sale * * * of any prohibited article or substance the sale of each one of several packages shall constitute a separate violation. * * * "

The provision for one penalty for a first violation, and for a different penalty for the second and each subsequent violation, coupled with the explicit provision that the sale of each package shall constitute a separate violation, can be construed only as providing that more than one penalty may be collected when the defendant has been guilty of a series of violations. If this was the legislative intent, these accumulated penalties can certainly be enforced in a single action; for to require a separate action for each separate violation would impose both upon the state and the defendant a useless burden of litigation. This is not the case of a suit by a private individual for his own gain and to enforce a private right, as were all the cases relied on by appellant, but the case of an action by the state to compel obedience to a state health law, enacted for the protection and benefit of all the people of the state.

In some of the cases to which we have been referred the court has evidently been impressed with the enormous sums that might be recovered, if each plaintiff was permitted to recover accumulated penalties, which frequently would have resulted in imposing upon the delinquent defendant a punishment out of all proportion to the injuries suffered by the plaintiff. This consideration does not apply to the present case. While the judgment, abstractly considered, is not inconsiderable, the evidence affords data from which it can readily be computed that the value of the cream which defendant filched from the milk during the period that he pursued his illegal practices must have amounted to many times the sum for which the jury rendered a verdict. If accumulated penalties might not be collected in cases like the present, it is manifest that dishonest dealers could well afford to take great chances of discovery and prosecution, and thus the enforcement of the statute would be rendered most difficult and uncertain.

The judgment and order must be affirmed, with costs. All concur.