Estelle Aronwald, Plaintiff, v. Harry Sperber, Doing Business as Sperber's Meat Market, Defendant.
Sarah Aronwald, Plaintiff, v. Harry Sperber, Doing Business as Sperber's Meat Market, Defendant.

Municipal Court of New York, Borough of Brooklyn, June 14, 1944.

*George M. Aronwald* and *Nathan Treitel* for plaintiffs.

*John Kranis* for defendant.

*Harry Levine, Alexander J. Boudia* and *John D. Masterton,* for Office of Price Administration, intervener.

WECHT, J.   This is an action by two purchasers against a retail butcher for damages, under subdivision (e) of section 205 of the Emergency Price Control Act of 1942 [U. S. Code, tit. 50, Appendix, § 925, subd. (e)], for violating Maximum Price Regulation 394, covering meats, and Maximum Price Regulation 423, covering poultry.   (Commerce Clearing House, War Law Service, Price Control, Vol. 3, ¶¶ 43,594; 43,623.)

The sole issue submitted to a jury was whether or not the defendant asked and received more than the prices fixed by the schedules hereinabove referred to and promulgated by the Office of Price Administration, one plaintiff having purchased fifteen items of meat on six occasions and one item of poultry on another, and the second plaintiff having purchased one of meat and one of poultry on different occasions.   The verdict of the jury was in favor of the plaintiffs on all eighteen items, and the assessment of damages was submitted to the court.   Since there was sufficient evidence to sustain the verdict of the jury on all eighteen items, the court will not disturb such finding.

Plaintiffs stoutly maintain that, as a matter of law, they are entitled to recover a $50 penalty for each individual item, or a total of $900.

In this contention plaintiffs are supported by the Office of Price Administration.

The defendant, per contra, insists just as stoutly that the plaintiffs are entitled to but one sum of $50 for the violation of each price schedule, or a total for each plaintiff of $100.

The problem that now confronts the court is the interpretation of the statute in question.   That section is subdivision (e) of section 205 of the Emergency Price Control Act of 1942, and reads as follows: " If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable

maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court."

It is to be noted that this section speaks of violating " a regulation, order, or price schedule ". This is passing significant. After all, the chief aim and purpose of language is to convey thought. It is with this axiomatic idea in mind that a statute or regulation must be read and construed. It must be borne constantly in mind that those who enact statutes and regulations are desirous that their mandates be understood. Words may not be read into a statute in order to make it mean something that the very wording seems to omit.

Giving heed to this truism, one perforce asks where, in the above-cited section, is there to be found any sanction for a $50 penalty for each individual purchase? It is clear that all commodities were classified into separate orders or schedules, and that the violation of any order or schedule calls for a penalty of $50 against the violator. Some schedules or orders contain more items than others, but the violation of the order or schedule as a unit calls for a $50 penalty.

The language of subdivision (e) of section 205 is clear and hardly leaves room for farfetched speculation. It calls for a penalty for the violation of a " regulation, order, or price schedule prescribing a maximum price or maximum prices ". Those who used this language in enacting the law were aware of the fact that a schedule contains numerous items, yet but a single penalty is prescribed for any violation of such a schedule. To twist this language to mean that each item of the schedule is to be treated as a single schedule, would certainly be doing violence to language itself.

This court is reluctant to read words into a penal provision, so as to mulct one of greater damages than the very provisions call for. Had Congress intended to exact a $50 penalty for each sale beyond the prescribed price, it could have said so in no uncertain vocables. The law deals with reasonable concepts and the statute must be so construed.

The Emergency Price Control Act of 1942 is a salutary war measure. Its purpose is obvious enough; to prevent avarice and cupidity on the part of sellers of commodities from getting out of hand and thus prevent an increase of the consumers' hardships. The rising tide of prices had to be checked by legislative enactment. However, no intent can be read into that wise and prudent enactment to establish thereby a sort of gestapo, with each individual consumer an informer, leading to inordinate and unconscionable fines and penalties. Unless the section dealing

with penalties commands in unequivocal language that each individual purchase shall carry a penalty of $50, the conscience of the court forbids that most harsh interpretation. Since the section does not contain any such language, the construction irresistibly leads to the conclusion herein reached.

The attorney for the Office of Price Administration lays goodly stress on the thought that the statute referred to is remedial and not penal, and, therefore, calls for a liberal interpretation in favor of plaintiff. With this the court cannot agree. Liberal is not synonymous with violent. A liberal interpretation is not tantamount to being liberal with the defendant's funds. There should not be such a wide margin of demarcation between law and good morals as the contrary holding would produce.

In *Huntington* v. *Attrill* (146 U. S. 657) the court recognized that the words " remedial " and " penal " are often used interchangeably. " The words ' penal ' and ' penalty ' have been used in various senses. Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws. * * * But they are also commonly used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered. * * * ' the Act indeed does give a penalty, but it is to the party grieved. * * * The action is purely remedial and has none of the characteristics of a penal prosecution. All damages * * * operate to a certain extent as punishment; * * * and to deter others from offending in like manner '."

It hardly matters, however, whether the statute in question be penal or remedial, for no words may be added or subtracted, and no fanciful meaning may be given to words of a statute. Any other reasoning would lead to cumulative penalties. The cases are legion to the effect that cumulative penalties are not sanctioned by the courts, unless constrained to do so by the plain, unambiguous language of the statute itself.

In *Sturgis* v. *Spofford* (45 N. Y. 446) the Court of Appeals reduced a recovery of forty-six penalties of $100 each to but one penalty, because the statute does not say for each employment, nor for each offense ". The court then stated that " Prosecutions for aggregated penalties should not be encouraged. * * * if the prosecution is promptly instituted for a single offense, it operates as a salutary warning to discontinue the practice, or acts complained of ".

By parity of logic, it must be stated that plaintiffs could have and should have brought their action after the first purchase. The design of the statute involved here could not have been to enrich one member of the community at the expense and detriment of another. The retailer is expected to act in good faith and obey price regulations; so is there a duty on the consumer to act in similar good faith and commence an action, if he so desires, after the first overcharge is made.

The danger involved in cumulative penalties, as here attempted, is obvious enough. In *Fisher* v. *N. Y. C. and H. R. R. R. Co.* (46 N. Y. 644), also involving an action for penalties, the Court of Appeals stated: * * * " the statute in question is to be fairly construed, whether regarded as penal, or remedial so as to carry into effect the intention of the makers, apparent from the language used. * * * My conclusion is, that but one penalty can be recovered upon the statute under consideration, for all acts committed prior to the commencement of the action."

The court then definitively puts a quietus upon plaintiff's argument by saying: " The idea that a liability to a penalty of fifty dollars with costs of suit will be insufficient to restrain " violations " is too evidently groundless to require consideration; but even if sound, the legislature, and not the courts, must apply the remedy."

In *Suydam* v. *Smith* (52 N. Y. 383) the court, citing a mort of cases, decided definitely that, unless the statute contain the words " for each offense ", then but one penalty would be allowed.

In the rather recent case of *Griffin* v. *Interurban St. Ry. Co.* (179 N. Y. 438) the Court of Appeals reviewed well-nigh all decisions on the subject, and concluded: " It is no doubt the rule to be deduced from the decisions of this court that no action for cumulative penalties is permissible unless it is clear from the language of the act inflicting the penalty that it was the intention of the legislature to provide a penalty for each and every violation of the statute." In that case, despite the fact that the Act (Railroad Law, § 104) called for a penalty " for every refusal to comply ", the court stated further:

" Notwithstanding this fact a majority of my brethren are of opinion that while the rule for the recovery of cumulative penalties, as already adverted to, is firmly established by the earlier decisions of this court, yet the changed conditions in the modern life of great cities render its modification imperative.

" Actions of this nature (permitting a long period to elapse before beginning actions) have become highly speculative and

present a phase of litigation that ought not to be encouraged.

"The court is of opinion that if cumulative recoveries are to be permitted, the legislature should state its intention in so many words; that a more definite form of statement be substituted for the words hitherto deemed sufficient. We * * * are dealing with a great abuse which demands immediate correction. A sound public policy requires that only one penalty should be recovered in a single action, and that the institution of an action for a penalty is to be regarded as a waiver of all previous penalties incurred."

Many more cases may be cited, but the court feels that sufficient has been shown to justify this court's conviction that the conclusions reached by it are sound and in accord with the weight of prior decisions.

It is the opinion of the court that, since the defendant violated but two price schedules, each plaintiff herein is entitled to recover a penalty of $50 for each of such violations, or a total of $100 for each plaintiff.

No allowance is made for counsel fees, since no claim was made during trial.

Judgments may be entered accordingly.