CHESTER GRZYBICKI, Respondent, *v.* ABRAHAM FRIEDMAN, Appellant.

Second Department, June 18, 1945.

*Gaius C. Bolin, Jr.,* for appellant.

*Bernard J. McCoy* for respondent.

JOHNSTON, J. The question presented involves the interpretation of the Emergency Price Control Act of 1942 and, more particularly, whether the civil liability imposed by subdivision (e) of section 205 thereof is cumulative so as to create a separate cause of action for each violation.

The statute, section 205, subdivision (e) (U. S. Code, tit. 50, Appendix, § 925, subd. [e]), provides: " If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this

subsection on behalf of the United States. Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. The provisions of this subsection shall not take effect until after the expiration of six months from the date of enactment of this Act."

The facts are not in dispute. Defendant is the owner of a multiple dwelling house in Poughkeepsie. Plaintiff occupies one of the apartments under a lease dated September 1, 1943. For each of the five months from September, 1943, to January, 1944, inclusive, defendant charged and received $32 as the monthly rental. For this period the Price Administrator, pursuant to the act, had adopted a schedule fixing the maximum monthly rental at $30.

Defendant does not question the validity of the schedule or the reasonableness of the maximum rental prescribed therein. Defendant also admits he charged and received from plaintiff for each of the five months $2 in excess of the established maximum rental.

Plaintiff instituted this action to recover $50 for each monthly overcharge, or a total of $250. At the close of the trial each party moved for a directed verdict, and the court granted plaintiff's motion and awarded plaintiff judgment for the full amount, plus $50 attorney's fees and costs. Defendant appeals, contending the penalties provided by the act are not cumulative.

It will be observed that the act does not in express terms state whether the liability of $50 or three times the overcharge (whichever is greater) shall be imposed for each violation; or whether this liability shall be the maximum to be imposed for all violations committed prior to the commencement of the action. The absence of such explicit language has resulted in numerous conflicting decisions in both the State and Federal courts.

The following cases hold that the liability is cumulative: *Gilbert* v. *Thierry* (58 F. Supp. 235, affd. on opinion of District Judge, 147 F. 2d 603); *Lambur* v. *Yates* (148 F. 2d 137); *Lapinski* v. *Copacino* (131 Conn. 119). The footnotes in each of these cases cite many decisions in the lower courts to the same effect.

The following cases hold that the liability is not cumulative: *Ward* v. *Bochino* (181 Misc. 355, affd. 268 App. Div. 814); *Aronwald* v. *Sperber* (182 Misc. 736); *Gordon* v. *Hochberg* (182 Misc. 117); *Kurland* v. *Bukspan* (184 Misc. 590); *Everly* v. *Zepp* (57 F. Supp. 303); *Simmons* v. *Charbonnier* (56 F. Supp. 512); *Peters* v. *Felber* (152 P. 2d 42 [Cal.]).

In my opinion, regardless of precedent, an analysis of the act, in the light of its purposes, reveals a definite intent on the part of Congress to make the liability cumulative. The act is an emergency wartime measure which may be terminated at any time by proclamation of the President or joint resolution of Congress that the emergency has ended; and if not thus terminated it would expire on June 30, 1943. From time to time this expiration date has been extended. Its present expiration date, subject to prior termination in the manner indicated, is June 30, 1945. (Federal Stabilization Extension Act of 1944, § 101; § 108, subds. [b], [c].)

The first section of the act of 1942 expressly provides that its purposes are " to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents " and that the attainment of these purposes is " in the interest of the national defense and security and necessary to the effective prosecution of the present war."

To achieve these aims the second section empowers the Price Administrator to establish the maximum rentals for housing areas within designated defense areas (which he has done in the instant case). The fourth section provides that: " (a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202 (b) or section 205 (f), or to offer, solicit, attempt, or agree to do any of the foregoing."

Experience gained from prior wars had brought home to Congress that " ' of all the consequences of war, except human slaughter, inflation is the most destructive. ' " (*Hecht Co.* v. *Bowles,* 321 U. S. 321, reversing on other grounds, *sub nom. Brown* v. *Hecht Co.,* 137 F. 2d 689.) As stated by Mr. Justice DOUGLAS in *Bowles* v. *Willingham* (321 U. S. 503, 520–521): " Congress was dealing here with the exigencies of wartime conditions and the insistent demands of inflation control. * * * Congress chose not to fix rents in specified areas or on a national scale by legislative fiat. It chose a method designed to meet the needs for rent control as they might arise and to accord some leeway for adjustment within the formula

which it prescribed. At the same time, the procedure which Congress adopted was selected with the view of eliminating the necessity for ' lengthy and costly trials with concomitant dissipation of the time and energies of all concerned in litigation rather than in the common war effort.' "

In answer to claims of hardship under the act, Chief Justice STONE, in *Yakus* v. *United States* (321 U. S. 414, 431–432), states that the act is a wartime emergency measure and it " was adopted January 30, 1942, shortly after our declaration of war against Germany and Japan, when it was common knowledge, as is emphasized by the legislative history of the Act, that there was grave danger of wartime inflation and the disorganization of our economy from excessive price rises. Congress was under pressing necessity of meeting this danger by a practicable and expeditious means which would operate with such promptness, regularity and consistency as would minimize the sudden development of commodity price disparities, accentuated by commodity shortages occasioned by the war.

" Inflation is accelerated and its consequences aggravated by price disparities not based on geographic or other relevant differentials. The harm resulting from delayed or unequal price control is beyond repair."

It has been held that the act subjects to the same civil liability both the casual, innocent offender and the habitual, malevolent culprit. The good faith of the one or the bad faith of the other is immaterial. (See *Bowles* v. *American Stores,* 139 F. 2d 377, 378, 379.) " Innocent nonconformity with the Price Control Act is as inflationary and as damaging to competitors and the public as guilty nonconformity. * * * Inflation is infectious and cumulative. It cannot be prevented in general unless it is prevented in particular." (*Brown* v. *Hecht Co.,* 137 F. 2d 689, 691, 694–695.)

Bearing in mind that the primary purpose of the act was to prevent inflation, the language of the subdivision in question (§ 205, subd. [e]) leaves no doubt that Congress intended to impose a civil liability for each violation and that such liability was to be cumulative within the year in which suit may be brought thereon. Unless civil liability is deemed to be cumulative, every initial violator would be encouraged to repeat his transgression with the assurance that, in any event, he could be made to respond in damages only for one violation.

All the cases which hold that the civil liability imposed by the act is not cumulative may be summarized by stating that they rest on either or both of the following grounds:

First. That under the act it is not the payment of the monthly rentals but the letting of the premises at a price in excess of the schedule which is the equivalent of the unlawful sale condemned; and, consequently, no action may be founded on any rental payment made pursuant to a lease until that lease has expired and the total rental has been paid. In this respect it is said that a lease is analogous to a sale in which the purchase price is payable in periodic installments.

Second. That unless a statute specifically provides for or directs cumulative liability, it will not be so construed.

In my opinion neither ground is legally tenable.

As to the first: While technically a lease is a sale *pro tanto* of the premises at a price equal to the total rent payable periodically during the term, and in that sense a lease is comparable to a sale on the installment plan, that fact is immaterial. The act clearly shows that its prohibition is directed not at the agreement of letting, but at every payment in excess of the maximum rent prescribed by the schedule. Admittedly the schedule does not set forth gross rentals based on a contract, agreement or lease. It fixes monthly rentals based on reasonable value. In every case it is the schedule which the defendant is charged with violating.

As noted above, the act (§ 4, subd. [a]) makes it unlawful to demand or receive any rent in violation of the price schedule "regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into." The act (§ 205, subd. [e]) then imposes the civil liability for the "receipt of rent," in violation of the schedule. It makes payment or the receipt of rent the equivalent of a sale; and it does so without regard to the contract or lease pursuant to which the rent was paid or the sale made.

Unless the act be deemed to operate upon each payment or receipt of the rent, it could not control rentals at all. This is an emergency statute, effective for a limited period. Many, perhaps most, leases will extend beyond the life of the statute. Consequently, to make the lease and the total payments of rent thereunder the basis of action, would render the statute abortive. Such a theory as the basis of liability under the act "would destroy the vitality of the remedy and place a premium upon repeated violations." (*Lambur* v. *Yates,* 148 F. 2d 137, 139, *supra.*)

As to the second: It is true that there are a few New York cases, notably *Griffin* v. *Interurban St. Ry. Co.* (179 N. Y. 438), which hold that cumulative penalties may not be recovered

unless the statute expressly commands that they be allowed. But in each case the court was construing a statute that had no relation to the act involved in the case at bar. Moreover, in the more recent cases, notably *People* v. *Spencer* (201 N. Y. 105, 111) and *People* v. *Abramson* (208 N. Y. 138, 143), the Court of Appeals receded from the doctrine enunciated in the *Griffin* case (*supra*) and adhered to the cardinal principle that all statutes are to be construed so as to give effect to the legislative intent.

But if precedent is to be the guide here, it may be found in the more pertinent decisions of the United States Supreme Court in construing Federal statutes. (*Blockburger* v. *United States*, 284 U. S. 299; *Ebeling* v. *Morgan*, 237 U. S. 625; *U. S. ex rel. Marcus* v. *Hess*, 317 U. S. 537, 552; *St. Louis, I. Mt. & So. Ry. Co.* v. *Williams*, 251 U. S. 63, 67.)

"It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. * * * When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield." (*Sola Electric Co.* v. *Jefferson Co.*, 317 U. S. 173, 176; see, also, *Wragg* v. *Federal Land Bank*, 317 U. S. 325, 328; *Philco Corporation* v. *Phillips Mfg. Co.*, 133 F. 2d 663, 671–673.)

It would unduly extend this opinion to state the facts and the reasoning of the court in each of the cases cited, but the *Blockburger* case (*supra*) is typical. There the statute made it unlawful to sell narcotics except in or from the original stamped package. It was held that several separate sales, even though made to the same person during the same day, constituted independent violations which subjected the wrongdoer to cumulative penalties. The court, speaking through Justice SUTHERLAND, pointed out that (p. 305): "The plain meaning of the [statutory] provision is that each offense is subject to the penalty prescribed; and if that be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction."

Incidentally, it should be borne in mind that the Price Administrator, who is charged with the administration and enforcement of the act, in this and all other cases, has interpreted the act as imposing a cumulative liability. What

recently was said concerning the interpretation of the Fair Labor Standards Act by its Administrator may be repeated here. "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." (*Skidmore* v. *Swift & Co.*, 323 U. S. 134, 139–140.)

Finally, it remains to be noted that Congress itself ascribed the same meaning to the Emergency Price Control Act of 1942, as does the Price Administrator. On June 30, 1944, the Congress enacted the Stabilization Extension Act of 1944, which amends the Emergency Price Control Act of 1942 as to violations occurring thereafter. The Stabilization Act (§ 101; § 108, subds. [b], [c]), besides extending the expiration date of the Emergency Price Control Act, amends the latter's civil liability provisions, quoted above (§ 205, subd. [e]), by: (a) vesting in the courts the discretion to fix this liability within specified reduced limits, particularly when the offender proves his offense to have been unintentional and unavoidable; and (b) providing that a judgment in an action for damages shall be a bar to the recovery of any further damages from the same defendant by reason of sales to the same purchaser prior to the institution of the action in which judgment was recovered.

These amended provisions also subject the offender to a civil liability for each violation. The difference, however, is that a purchaser or rentpayer, within the one-year period prescribed, must bring either successive actions for each violation as it occurs or one action embracing all past violations. In such an action, whether for one or more violations, the plaintiff's maximum recovery is limited to three times the overcharge or overcharges or the sum of fifty dollars, whichever is greater; and where the overcharge is proved to have been unintentional and unavoidable the maximum liability is fixed at the amount of the overcharge or overcharges or twenty-five dollars, whichever is greater.

The Congress adopted the Stabilization Act upon reports of its committees which urged its enactment on the ground that the existing provisions of the Price Control Act gave the court no discretion to impose a lesser liability and that "if there is a series of overcharges the purchaser is entitled to recover at least $50 for each such overcharge;" whereas under the proposed bill "the purchaser may recover only one $50 for all of the overcharges which he has paid to a given seller prior to

the bringing of the suit." (U. S. Code, Cong. Service, 1944, pp. 1187-1188.)

From the Congressional committee reports and the language of the Stabilization Act (§ 108, subds. [b], [c]) it is apparent that Congress understood the Emergency Price Control Act to provide for cumulative liability; that it decided to change its policy and, as to future violations (occurring after June 30, 1944), to halt the collection of cumulative damages. But in every case Congress still left to a plaintiff the incentive of the recovery of a judgment for the minimum of $50, plus costs and attorney's fees. Therefore, it is plain that Congress itself construed the Emergency Price Control Act of 1942 as authorizing cumulative liability, and its 1944 amendment was designed to curb the collection of such damages only as to future violations.

In my opinion the statute was violated each time the defendant received rent in excess of the maximum fixed in the schedule, and for each violation defendant was subject to the liability prescribed by the act. Any other interpretation would defeat rather than further its purpose. True, the liability when contrasted with the overcharge seems large, perhaps, as has been suggested, unreasonable and oppressive, but " the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction." (*Blockburger* v. *United States,* 284 U. S. 299, 305, *supra.*)

The judgment should be affirmed, with costs.

CLOSE, P. J., HAGARTY, LEWIS and ALDRICH, JJ., concur.

Judgment of the County Court of Dutchess County unanimously affirmed, with costs.