LUKE O'REILLY, Respondent, v. THE BROOKLYN HEIGHTS RAILROAD COMPANY, Appellant.

RAILROADS — SURFACE RAILROAD COMPANIES LEASING AND OPERAT-
ING INTERSECTING LINES ARE COMPELLED TO GIVE TRANSFERS FOR
SINGLE FARE. Where a street surface railroad company engaged in the operation of a railroad in the borough of Brooklyn under the statute (Rail-road Law, L. 1890, ch. 565; amd. L. 1892, ch. 676) leases other railroads and operates them, which roads intersect with its own road, the lessee, under section 104, undertakes to transfer passengers from its own line to those of the leased lines and *vice versa* for a single fare.

*O'Reilly* v. *Brooklyn Heights R. R. Co.,* 95 App. Div. 253, affirmed.

(Argued October 17, 1904; decided November 29, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 24, 1904, affirming a judgment in favor of plaintiff entered upon a decision of the Municipal Court of the city of New York, borough of Brooklyn.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles A. Collin, William F. Sheehan* and *John L. Wells* for appellant. Within the meaning and intent of the language, " the railroads embraced in such contract," as used in section 104 of the Railroad Law, the Vanderbilt Avenue line, which was owned and operated by the Atlantic Avenue Railroad Company from 1886 to 1899, by the Nassau Electric Railroad Company from 1899 to 1900, and which, together with all other railroads owned by the Nassau Electric Rail-

road Company, was demised to the defendant, the Brooklyn Heights Railroad Company, by the lease of 1900, was not one of the railroads which was "embraced in the contract" constituted by the lease made in 1893, whereby all the railroads owned by the Brooklyn City Railroad Company, including the Crosstown line, were demised by it to the defendant, the Brooklyn Heights Railroad Company. (*Topham* v. *I. S. Ry. Co.*, 96 App. Div. 337; *Mendoza* v. *M. S. Ry. Co.*, 48 App. Div. 62.) Section 104 of the Railroad Law has ample scope for its application, with substantial and important force and effect, under the ordinary and natural interpretation of its language, without giving a strained or unnatural meaning to the language "the railroads embraced in such contract," and without ignoring or refusing to give to such language its natural and full force and meaning. (*O. R. R. Co.* v. *V. R. R. Co.*, 16 Abb. [N. S.] 264; *B. C. R. R. Co.* v. *B. C. R. R. Co.*, 51 Hun, 602; *People* v. *O'Brien*, 111 N. Y. 1.) A critical analysis of the entire language of section 104 of the Railroad Law and a broad view of its policy, together with a broad view of the general policy of the entire statutory system of which section 104 is but a fractional part, confirm the conclusion that the language of section 104, "the railroads embraced in such contract," was intended by the legislature to be given its natural and full force and meaning, and that section 104 was intended to be applicable only to situations created by traffic contracts and not to situations created by leases. (*Roosa* v. *B. H. R. R. Co.*, 28 Misc. Rep. 387.)

*Louis Ehrenberg* for respondent. The contract referred to in section 104 of the Railroad Law of 1892 refers back to section 78 of the same law, and does not refer to any particular kind of a contract except as contained within section 78. (*Mendoza* v. *M. S. Ry. Co.*, 51 App. Div. 430.) The laws of 1885, and the amendatory laws which revised them, must be read together to interpret and place a proper construction upon the Railroad Law in existence when the leases were made. (*Mendoza* v. *M. S. Ry. Co.*, 64 N. Y. Supp. 745;

*Minor* v. *E. R. R. Co.*, 171 N. Y. 566; *Blake* v. *Wheeler*, 18 Hun, 496; *Rogers* v. *Bradshaw*, 20 Johns. 735; *Rexford* v. *Knight*, 15 Barb. 627.) Where benefits under a statute are taken advantage of, the obligations connected therewith are assumed by the beneficiary. (*B. & R. B. R. R. Co.* v. *L. I. R. R. Co.*, 72 App. Div. 496; *People* v. *B. R. R. Co.*, 126 N. Y. 29; *Conrad* v. *Trustees, etc.*, 16 N. Y. 158, 163, 164; *People* v. *W. T. & B. Co.*, 47 N. Y. 592; *Thomas* v. *R. R. Co.*, 101 U. S. 84; *Moore* v. *B. C. R. R. Co.*, 108 N. Y. 104; Potter on Corp. § 688.) Of two constructions of a statute, the one most favorable to the public or the state must be adopted. (*B. & R. B. R. R. Co.* v. *L. I. R. R. Co.*, 76 N. Y. Supp. 778; *People* v. *B. R. R. Co.*, 126 N. Y. 29; *Barrett* v. *Stockton*, 2 M. & G. 134; *Auburn* v. *C. P. R. R. Co.*, 9 N. Y. 144; *Minor* v. *E. R. R. Co.*, 177 N. Y. 566; *People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659; *Mayor, etc.*, v. *B., etc., R. R. Co.*, 97 N. Y. 275; *H. B. Co.* v. *U. F. Co.*, 29 Conn. 210.) The railroads owned by both lessor and lessee are "embraced in the contract," as referred to in section 104 of the Railroad Law. (1 Black. Comm. 475, 476.)

*Per Curiam.* The plaintiff was a passenger upon the Vanderbilt Avenue line of the Nassau Electric Railroad Company, and had paid his fare of five cents. He demanded a transfer ticket over the Brooklyn City Railroad Company's line from its intersection with the Vanderbilt Avenue line, in the city of Brooklyn, which was refused, and this action was brought to recover the penalty given by the statute therefor.

The history of the legislation upon the subject and the construction of the various enactments pertaining thereto are covered by our opinion in the case of *Griffin* v. *Interurban Street Railway Company* (179 N. Y. 438). That opinion covers all of the points involved herein, with one exception. It is now contended on behalf of the appellant that the Brooklyn City Railroad Company, over which the plaintiff

demanded a transfer, was not a railroad "embraced in such
contract" of the defendant company, within the meaning of
section 104 of the Railroad Law. The defendant, the Brook-
lyn Heights Railroad Company, was operating the Brooklyn
City Railroad and the Vanderbilt Avenue line of the Nassau
Electric Railroad Company under two separate leases, one exe-
cuted in 1893 and the other in 1900. The statute provides
that "every such corporation entering into such contract
shall carry or permit any other party thereto to carry between
any two points on the railroads or portions thereof embraced
in such contract any passenger desiring to make one continu-
ous trip between such points for one single fare, not higher
than the fare lawfully chargeable by either of such corpora-
tions for an adult passenger. Every such corporation shall
upon demand, and without extra charge, give to each passen-
ger paying one single fare a transfer, entitling such passenger
to one continuous trip to any point or portion of any railroad
embraced in such contract, to the end that the public con-
venience may be promoted by the operation of the railroads
embraced in such contract substantially as a single railroad
with a single rate of fare." It is contended that the railroad
lines of the Nassau Electric Railroad Company are not
embraced in the lease made by the Brooklyn City Railroad
Company to the defendant and that the Brooklyn City Rail-
road lines are not embraced in the lease made by the electric
railroad company to the defendant, and, therefore, there is no
obligation on the part of the defendant to grant transfers from
one of those lines to the other. In order to determine this
question we think it important to first consider the nature of
the obligation of the defendant company, arising under the
statute, upon its executing the lease of the Brooklyn City Rail-
road Company. It will be observed that the language of
the statute is that "every such corporation entering into such
contract shall carry," etc. The obligation to carry, there-
fore, arises from the entering into the contract. The defend-
ant company was the lessee and entered into the contract with
the lessor, thereby undertaking to operate the roads of the

lessor company.  When a street surface railroad company, engaged in the operation of a railroad under the statute, leases another railroad and commences to operate the same, which roads intersect each other, the evident purpose of the act was that they should be deemed " embraced " in the contract and that passengers should be transferred from one road on to the other so as to entitle " such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract, substantially as a single railroad with a single rate of fare."  We think, therefore, that a fair and reasonable construction of the statute is that the lessee railroad, in taking a lease of another railroad, undertakes to transfer passengers from its own line to that of the leased line and *vice versa*. If we are correct in this construction it would then follow that when the defendant company subsequently leased the Vanderbilt Avenue line of the Nassau Electric Railroad Company it undertook to transfer passengers from the Vanderbilt Avenue line over its own road and thence, by its former lease, to transfer passengers over the Brooklyn City lines and *vice versa*.  In other words, the roads leased by the defendant company, in effect, became the roads of that company, operated by it, and when it leased other roads and commenced their operation the obligation was to transfer passengers over all of the roads operated by it for a single fare.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., BARTLETT, HAIGHT, MARTIN, VANN and WERNER, JJ., concur; GRAY, J., not sitting.

Judgment affirmed.