The People of the State of New York, Appellant, *v.* The Brooklyn Heights Railroad Company, Respondent.

1. Railroads — Provisions of Railroad Law (Art. 4, § 101) with Respect to Five-cent Fare on Street Surface Railroads, Not Applicable Where Lines Leased Are Steam Surface or Elevated Roads. Section 101 of article 4 of the Railroad Law (L. 1890, ch. 565, as amd.), requiring a street surface railroad to carry a passenger over its own line and any line leased by it within the limits of any incorporated city or village for a single fare, applies solely to street surface railroads; it does not apply where the line leased is an elevated or steam surface road having a charter right to charge a greater fare. A street surface railroad may lease another street surface railroad or a steam surface railroad or an elevated railroad (Art. 3, § 78); if it does, it must operate the leased line in accordance with the requirements of the charter thereof and is entitled to the benefits conferred thereby, including the authorized rate of fare.

2. Change of Motive Power on Leased Lines Does Not Affect Rate of Fare. The fact that the lessee subsequently dispensed with steam as a motive power and substituted electricity on the leased lines

does not affect the situation or change its rights so far as the question of fares is concerned.

3. Rate of Fare a Question for Legislative Determination. Whether the elevated and steam surface railroads within a city should be placed upon the same basis with street surface railroads with reference to fares and the transfer of passengers is a question for the determination of the legislature and not for the courts.

Not reported below.

(Argued December 3, 1906; decided January 8, 1907.)

Appeal, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 2, 1906, which affirmed an interlocutory judgment of Special Term overruling a demurrer to the answer.

The nature of the action and the facts, so far as material, are stated in the opinion. The following questions were certified : " 1. Does the plaintiff's complaint state facts sufficient to constitute a cause of action ?

" 2. If the complaint states facts sufficient to constitute a cause of action, is the first defense of the defendant's answer sufficient in law upon the face thereof ?

" 3. If the complaint states facts sufficient to constitute a cause of action, and the first defense of the defendant's answer is insufficient in law upon the face thereof, is the second defense of the defendant's answer sufficient in law upon the face thereof ? "

*Julius M. Mayer,* Attorney-General (*Stephen C. Baldwin* and *Frederick S. Martyn* of counsel), for appellant. The first question certified should be answered in the affirmative. (*People* v. *B., F. & C. I. Co.*, 89 N. Y. 75 ; *People* v. *E. G. L. Co.*, 141 N. Y. 232.) The defendant is lawfully entitled to charge but a single fare of five cents for the transportation of each passenger over the routes mentioned in the complaint. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518; *O. R. & N. Co.* v. *Oregon Ry. Co.*, 131 U. S. 1; *B. S. T. Co.* v. *City of Brooklyn*, 78 N. Y. 524 ; *People ex rel. T. A.*

4

*R. R. Co.* v. *Newton,* 112 N. Y. 396; *Langdon* v. *Mayor, etc.,* 93 N. Y. 128; *U. S.* v. *Arredondo,* 6 Pet. 736; *C. R. Bridge* v. *Warren Bridge,* 11 Pet. 420; *Matter of McGraw,* 111 N. Y. 66; *McNulty* v. *B. H. R. R. Co.,* 31 Misc. Rep. 674; *Barnett* v. *B. H. R. R. Co.,* 53 App. Div. 432.)

*Edward W. Hatch* and *Charles A. Collin* for respondent. Sections 101 and 104 of the Railroad Law are in article 4, which is entitled "Street Surface Railroads" and which is limited, strictly, to the subject expressed in the title. There is nothing in article 4 authorizing or regulating the construction, maintenance or operation of steam railroads or elevated railroads. There is not, and never has been any provision in article 4 authorizing a street surface railroad corporation to operate a steam railroad or an elevated railroad, or regulating the operation of a steam railroad or of an elevated railroad by a street surface railroad corporation. (*Matter of B., Q. C. & S. R. R. Co.,* 185 N. Y. 171; *Barnett* v. *B. H. R. R. Co.,* 53 App. Div. 436.) Construing the general language in the first two sentences of section 101 of article 4 of the Railroad Law with reference to the repeated judicial utterances that article 4 relates to street surface railroads only; with reference also to the express limitations to the same effect, in the title and first sentence of that article; with reference also to the express limitations to the same effect in nearly every other section of the article, and with reference to the other language in section 101 itself and to the whole internal structure of that section, the conclusion is irresistible and clear that the general language in section 101 "any road" means "any street surface railroad." But even if the general language of the first two sentences of section 101 should be deemed applicable to all kinds of railroads, nevertheless, by the express exception contained in the third sentence, the first two sentences are not applicable to the four miles and more of the steam railroad portion of each route which were constructed prior to May 6, 1884, and were then in operation; and, therefore, section 101 does not prohibit the defendant from charging ten cents to each passenger

who is carried three miles and more over such excepted steam railroad portion on each route. (*Barnett* v. *B. H. R. R. Co.*, 53 App. Div. 432; *B. El. R. R. Co.* v. *B. & W. E. R. R. Co.*, 23 App. Div. 29; *McNulty* v. *B. H. R. R. Co.*, 31 Misc. Rep. 67; *McNulty* v. *B. H. R. R. Co.*, 36 Misc. Rep. 402; *Matter of McFarlane*, N. Y. L. J. Aug. 14, 1906.) Section 104 of the Railroad Law is applicable only to contracts between street surface railroad corporations for the operation of street surface railroads. (*Griffin* v. *I. S. Ry. Co.*, 179 N. Y. 443.) Even if it should be held that section 104 is applicable to steam railroads and elevated railroads, nevertheless we still insist that it authorizes the defendant to charge the rate of fare which it has charged, by virtue of the words " one single fare not higher than the fare lawfully chargeable by either of such corporations for an adult passenger." (*Jackson* v. *H. R. R. Co.*, 49 N. Y. 455; *Matter of Village of Middletown*, 82 N. Y. 196; *People* v. *Fitch*, 148 N. Y. 71; *Minor* v. *E. R. R. Co.*, 171 N. Y. 566; *Parker* v. *E., C. & N. R. R. Co.*, 165 N. Y. 274.) Sections 101 and 104 of article 4 of the Railroad Law, so far as they prescribe the rate of fare for a continuous ride or trip, apply only to street surface railroads constructed within the limits of one incorporated city or village, and, therefore, the railroads in question are excluded from the operation of either section. (*People ex rel. S. G. L. Co.* v. *Gilroy*, 67 Hun, 323; 139 N. Y. 623; *Cameron* v. *N. Y. & M. V. W. Co.*, 133 N. Y. 336; *Christie* v. *Bowne*, 83 Hun, 107; *County of Jefferson* v. *City of Watertown*, 98 App. Div. 494; *Johnson Home* v. *Vil. of Seneca Falls*, 37 App. Div. 147; *Matter of East One Hundred & Sixty-ninth St.*, 26 Misc. Rep. 257; *Matter of East One Hundred & Fifteenth St.*, 29 Misc. Rep. 487; *People* v. *Fitzgerald*, 180 N. Y. 269.)

Haight, J. This action was brought to restrain the defendant from collecting more than one fare of five cents for a continuous ride over certain railroads operated by it within the city of New York. It appears from the allegations of

the complaint that the defendant was incorporated as a street surface railroad in 1887, under and pursuant to chapter 252 of the Laws of 1884, and that it constructed and continues to own and operate a street surface railroad the entire length of Montague street in the city of Brooklyn ; that under and pursuant to various leases and contracts it has acquired the right to and is operating a railroad over four different routes, viz. : The Sea Beach and Culver routes, commencing at the Manhattan terminal of the New York and Brooklyn bridge ; thence over the bridge to the Brooklyn terminal thereof ; thence over certain elevated railroads to Fifth avenue and Thirty-seventh street ; thence over certain steam surface railroads to Coney Island, and *vice versa*, a distance of 11.36 miles. The Brighton Beach route, commencing at the Manhattan terminal of the New York and Brooklyn bridge ; thence over the bridge to the Brooklyn terminal ; thence over an elevated road to Fulton street and Franklin avenue ; thence over certain steam surface railroads to Coney Island, and *vice versa*, a total length of 12.03 miles. The Cypress Hill route, commencing at Cypress Hill Cemetery ; thence over an elevated railroad to Fulton street and Franklin avenue ; thence over certain steam surface railroads to Coney Island, and *vice versa*, a total length of 13.34 miles. It further appears that all of the railroads so operated by it upon the routes mentioned are elevated railroads incorporated as such, or steam surface railroads operating upon a private right of way procured and owned by the company ; that all the steam surface railroads within the routes mentioned were constructed and in operation prior to May 6th, 1886, and had the right to charge under their charter three cents per mile ; that all of the elevated roads, included in the routes mentioned, were operated by steam locomotive engines and were authorized to charge as fare ten cents, except during certain hours, specifically mentioned, during which it was permitted to charge but five cents. After the defendant commenced the operation of these roads, electricity was substituted in place of steam, and they are now operated by that motive power,

Over the elevated roads it charges a fare of five cents, and over the steam surface roads, so called, it charges an additional fare of five cents.

The towns of New Utrecht, Gravesend, Flatbush and New Lots, which include the territory lying between the city of Brooklyn as it previously existed and the sea, were annexed to and became a part of the city in the years 1894 and 1896, and in 1898 the city of Brooklyn was consolidated with the city of New York.

The question presented for our determination is as to whether the defendant has the right to charge two fares of five cents each in transporting passengers over any of the routes mentioned, one fare of five cents over the elevated roads and another fare of five cents over the steam surface roads between the Brooklyn bridge and Coney Island and between Cypress Hill and Coney Island, or whether it is limited to a charge of one fare of five cents.

Chapter 565 of the Laws of 1890, as amended from time to time, known as the "Railroad Law," was designed to afford a complete system for the organization of railroad corporations, and for the construction and operation of railroads within this state. It consists of six articles.

The first contains general provisions with reference to the organization, powers, and location of all kinds of railroads, but it contains some sections which are limited to a particular kind of railroad. The second pertains to the construction, operation and management of railroads. Some of the sections of this article are general, applicable to all railroads, but some of the provisions pertain only to steam surface railroads. The third contains provisions authorizing the consolidation and reorganization of companies and the lease or sale of railroads, and is general, applying to all kinds of railroads. The fourth pertains exclusively to street surface railroads. The fifth pertains to other railroads in cities and counties which may be over, upon or under the surface of streets, thus including elevated and subway railroads. The sixth establishes a board of railroad commissioners, and pertains to their

duties.  Under article three, section 78, which applies to all railroads organized under general laws, the legislature has provided that " Any railroad corporation or any corporation owning or operating any railroad or railroad route within this state, may contract with any other such corporation for the use of their respective roads or routes, or any part thereof, and thereafter use the same in such manner and for such time as may be prescribed in such contract."  It was under this provision of the statute that the defendant acquired its right to operate the elevated and steam surface railroads, constituting the four different routes referred to, from the Brooklyn bridge and from Cypress Hill to Coney Island.  Article four, as we have seen, is entitled " Street Surface Railroads," and pertains exclusively to the location in streets, the construction and operation, and the rate of fare that may be charged for the transportation of passengers.  Section 101 provides that " No corporation constructing and operating a railroad under the provisions of *this* article, or of chapter 252 of the Laws of 1884, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village.  Not more than one fare shall be charged, within the limits of any such city or village, for passage over the main line of road and any branch or extension thereof if the right to construct such branch or extension shall have been acquired under the provisions of such chapter or of this article.  *  *  *  This section shall not apply to any part of any road constructed prior to May 6th, 1884, and then in operation, unless the corporation owning the same shall have acquired the right to extend such road, or to construct branches thereof under such chapter, or shall acquire such right under the provisions of this article, in which event its rate of fare shall not exceed its authorized rate prior to such extension.  The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this

article." Chapter 252 of the Laws of 1884, above alluded to, was passed May 6th of that year, and pertains to street surface railroads. Section 104 requires every such corporation, upon demand and without extra charge, to give to each passenger paying a single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad operated by it, to the end that public convenience may be promoted, and in case of a violation of its duty in this regard a penalty of fifty dollars is provided for each offense, recoverable by the aggrieved party. Under these provisions of the statute we have held that where one street surface railroad corporation acquires by lease or otherwise the right to operate another street surface railroad after the passage of the act, it must carry a passenger not only over its own road, but over the connecting leased roads operated by it within the limits of a city or village for a single fare; and that upon the intersection of such leased roads it must also upon demand furnish a transfer entitling the passenger to continue his trip over such connecting road operated by it. (*Griffin* v. *Interurban Street R. Co.*, 179 N. Y. 438; *O'Reilly* v. *Brooklyn Heights R. R. Co.*, 179 N. Y. 450.) The legislature has seen fit to limit the power of street surface railroads to consolidate, lease, contract or operate other street surface railroads by imposing a condition that in case they do so contract they shall transport over their connecting lines passengers for a single fare of five cents and furnish transfers to their own intersecting lines. But this, as we have seen, is limited to street surface railroads. The provisions of section 101, above referred to, are very specific in this particular; "no corporation constructing and operating a railroad under the provisions of this article, or chapter 252 of the Laws of 1884, shall charge," etc. As we have seen, "this article" is article four of the Railroad Law. It pertains exclusively to street surface railroads, and chapter 252 of the Laws of 1884, which was passed May 6th of that year, from which this section, as amended and revised, was taken, also pertains exclusively to street surface railroads. The words "this article" and

"such chapter" are twice repeated in the provisions of this section, thus emphasizing the legislative intent to limit its provisions to that particular kind of railroads. That such was the legislative intent is further apparent from the fact that no such provision or limitation is to be found in any of the general provisions of the Railroad Law as applicable to steam surface railroads or elevated railroads. It is true that the defendant was incorporated as a street surface railroad, that it has constructed, owns and operates a street surface road within the city of Brooklyn, and in case it leases or operates any other street surface railroad within that city it must furnish transportation over such leased connecting road for one fare; but such is not the case we have under consideration. The roads which it has leased and is operating which are involved in this case are not street surface railroads, but are elevated and steam surface roads.

The contention on the part of the state is, that the defendant's powers were limited to the operation of street surface roads, and that when it undertook to lease and operate elevated and steam surface roads they were brought within the provisions of sections 101 and 104, and that those sections should be construed as applicable thereto. We are of the opinion that this contention cannot be adopted. While the defendant was organized as a street surface railroad and was incorporated as stated, the General Railroad Law has authorized and empowered it to lease the elevated and steam surface railroads in question, by section seventy-eight of article three. The provision of that section, as we have seen, is that "*any* railroad corporation," etc. As we understand this phrase, it refers to *every* railroad incorporated under the provisions of the act. Such corporation "may contract with *any* other such corporation." No limitation is apparent. A steam railroad corporation can lease another steam surface railroad, a street surface railroad or an elevated railroad. So with a street surface railroad. It may lease another street surface railroad or a steam surface railroad or an elevated road; but when one railroad corporation undertakes to lease

and operate another road, it assumes all the duties, obligations and requirements imposed by the statute and the charter of such railroad. Such duties and obligations in the operation of steam surface railroads are in many respects different from those imposed in the operation of street surface roads, and in the operation of elevated roads there are still other obligations assumed which are materially different. We think it apparent, therefore, that when the legislature authorized the defendant to lease and operate the elevated and steam surface roads in question, it not only became empowered and authorized, but it was also its duty to operate such roads in accordance with the requirements of their respective charters. Having had cast upon it the duty and obligation to operate such roads in accordance with the requirements of their charters and the statute applicable thereto, as such lessee it became entitled to all of the privileges and benefits authorized by their charter and the statute, unless such roads are brought within the meaning of the sections referred to in article four, in which the defendant is limited to the charge of but one fare. We think that they are not. As we construe those sections they have reference to street surface railroads and no others. A corporation operating a street surface railroad is prohibited from charging more than one fare " for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof, within the limits of any incorporated city or village,   *   *   *   if the right to construct such branch or extension shall have been acquired under the provisions of such chapter or of this article." This provision has reference to street surface railroads, railroads which were constructed under the provisions " of such chapter or of this article," distinctly referring to those roads which were constructed under the provisions of the statute pertaining to street surface railroads. Nor do we think that the defendant, in dispensing with steam as a motive power and substituting electricity, affected the situation or changed its right so far as the ques-

**58**   People ex rel. W. S. El. Co. *v.* C. T. & E. S. Co.   [Jan.,

Statement of case.   [Vol. 187.

tion of fares is concerned.   Such change has been authorized under general laws, and by complying with the requirements of the statute with reference thereto it may be lawfully made.

The reasons that control the legislative mind in adopting this statute may not be important.   It is quite possible however, that the fact that the cost of the construction of elevated railroads being many times greater than that of street surface railroads, was one of the reasons why it did not see fit to place them upon the same footing as to fares.   Whether the elevated and steam surface railroads within a city should be placed upon the same basis with street surface railroads with reference to fares and the transfer of passengers, is a question for the determination of the legislature and not for the courts.

We consequently conclude that the complaint fails to state a cause of action, and that the judgment should be affirmed, with costs, and the first question certified answered in the negative.   Others not answered.

CULLEN, Ch. J., O'BRIEN, EDWARD T. BARTLETT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.