the abuses of illicit trading in transfers and for the knocking down of fares, to expose the surface railroads to almost open cheating by crooked passengers and traders and employés. Casual observation by the unconcerned citizen, riding up and down and waiting at points of intersection, shows sufficiently that such abuses, now existing, would be multiplied indefinitely. No evidence is offered by the appellant to contradict that introduced in such behalf by the respondent to emphasize this conclusion from easy observation, not gainsaid or questioned. Commercial as we are, if the carrying companies are to forego some of their legalized profits, the profits to be foregone should go to the benefit, not of pilfering passengers, or traders, or employés, but of the public, through taxation or percentages upon earnings (according to the several franchises and charters), payable to the state and to the municipalities, and collected.

The judgment should be affirmed, with costs.

---

### LOEW v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. February 11, 1907.)

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Frederick Loew against the New York City Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Argued before GILDERSLEEVE, MacLEAN, and AMEND, JJ.

John Loew, for appellant.

James L. Quackenbush, for respondent.

PER CURIAM. This is one of the so-called "North and South Cases," and raises precisely the point involved in the appeal of Peter C. Kelly v. New York City Ry Co. (No. 100, December Term) 102 N. Y. Supp. 742.

For the reasons stated in the opinion in the Kelly Case, handed down herewith, the judgment must be reversed, and judgment given for the plaintiff, as demanded in the complaint, with costs.

---

(52 Misc. Rep. 581)

### BARON v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. February 11, 1907.)

CARRIERS—STREET RAILROADS—TRANSFERS—LONG AND SHORT SERVICE CARS.

    Under Railroad Law, Laws 1892, p. 1406, c. 676, § 104, requiring a street railroad company to give a passenger a transfer entitling him to a continuous trip to any point of any road in its system, where it runs short-service and long-service cars over the same line, it must give a passenger on a short-service car a transfer entitling him to a ride over the remainder of same line on a long-service car from the terminal point of the short-service cars.

    MacLean, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Samuel Baron against the New York City Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GILDERSLEEVE, MacLEAN, and AMEND, JJ.

James L. Quackenbush (Henry F. Gannon, of counsel), for appellant.

Laurence J. Bershad, for respondent.

GILDERSLEEVE, J.   On March 28, 1906, the plaintiff boarded a south-bound Sixth avenue car at Seventeenth street and Sixth avenue, with the intention of going to Spring street and West Broadway, a point upon the Sixth avenue car line operated by the defendant. The car bore, in a conspicuous place, the sign, "4th Street Only," and when it reached Fourth street and Sixth avenue the conductor ordered the plaintiff and all other passengers off, stating that the car did not go any further.   The passengers alighted and the car switched off on the north-bound track.   The plaintiff had paid the fare of five cents on entering the car, and, when ordered off at Fourth street, as aforesaid, demanded a transfer from the conductor entitling him to a continuation of his trip to his place of destination, which transfer the conductor refused.   The plaintiff recovered judgment in the court below for $50 and costs.

It appears from the evidence that the defendant company, in regulating its traffic, provided, over the route the plaintiff desired to travel, two classes of cars upon the same tracks, viz., long and short service cars.   There were two southerly termini:   One Fourth street and Sixth avenue, being the terminus for the short-service cars; and the other at South Ferry for the long-service cars.   The record does not disclose the ground of the decision.   We assume that the learned trial justice rested the judgment on a violation of section 104, Railroad Law, Laws 1892, p. 1406, c. 676, which provides that upon the refusal of a street car company to issue a transfer to a passenger, entitling the passenger to a continuous trip from the point of embarkation to another point on the railroad operated by such company, the railroad company shall forfeit $50 to the aggrieved party.   What the plaintiff demanded was a transfer from a short-service car to a long-service car upon the same line.   Under the circumstances, was the refusal a violation by defendant of the provisions of section 104 of the railroad law?   We think it was.   Dunphy v. Erie Ry. Co., 42 N. Y. Super. Ct. 128; Jenkins v. Brooklyn Heights Ry. Co., 29 App. Div. 13, 51 N. Y. Supp. 216; O'Reilly v. Same, 179 N. Y. 450, 72 N. E. 517.   Also see opinion handed down this term in the case of Peter C. Kelly v. N. Y. City Ry. Co., 102 N. Y. Supp. 742.   The judgment stands upon the proposition that a railroad company, refusing a transfer from a line owned or operated by it to another line or car owned or operated by it, to a passenger desiring to make a continuous trip, is amenable to section 104 of the railroad law.   We consider this proposition sound and fully supported by the construction given to the statute in question in numerous decisions already rendered.

We cannot agree with the contention of the defendant that the plaintiff failed to establish a cause of action, on the ground that there is no proof that the transfer demanded by the plaintiff was to a leased line. Griffin v. Interurban St. Ry. Co., 179 N. Y. 449, 72 N. E. 513, is not authority for this claim. It was held in that case that section 104 applied to refusals to issue transfers to leased lines. The decision nowhere assails the proposition that a street car company, upon the refusal to issue a transfer from a line owned by it to another line owned by it, when demanded by a passenger desiring to make a continuous trip, is not amenable to section 104 of the railroad law. The Legislature never intended that the obligation imposed by said section should be limited to leased roads. It is not an excuse for a refusal of a transfer to the plaintiff to say that the giving of a transfer would confer upon him the privilege of stopping over. This argument could be urged against all transfers. We may properly take notice of the fact that the region of the city between Fifty-Ninth and Fourth streets, through which the car under consideration passed, is largely a congested business section, where the traffic is much heavier than in the extreme northerly or southerly parts of the city. The running of short-service cars between the long-service cars through crowded avenues we consider a reasonable regulation, well within the powers of the defendant company in the management of its railroads, when, as in this case, reasonable notice is given of the conditions of operation. We are of opinion, however, that defendant cannot lawfully refuse a transfer to a passenger whose continuous trip carries him beyond the terminal point of the short line. We concede to the defendant the right to establish lines of short-service cars, but we can find no authority that permits the defendant, no matter how conspicuous and complete the notice, to arbitrarily require passengers desiring to make a continuous trip beyond the place of destination of the short-service car to board only a long-service car. If the defendant possesses such authority, it might avoid the giving of many transfers by establishing numerous short routes in various parts of the city and by operating thereon mainly short-service cars.

The judgment must be affirmed, with costs to the respondent. The question involved in this appeal is of importance, and the defendant may have leave to appeal to the Appellate Division.

AMEND, J., concurs.

MacLEAN, J. (dissenting). The statute (section 104, Railroad Law [Laws 1892, p. 1406, c. 676]), read literally, does not indicate, rather the contrary, that a person shall have transfers one after another to ride on successive cars running in one direction. The plaintiff's contention, followed further to its conclusion, would allow men, eke women, to get off and proceed on less or more occupied cars with or without occasion them thereto moving. The public convenience mentioned in the statute is neither that of a passenger who has blundered nor of one who has spied out an informer's chance for a penalty. Statutory interpretation or divination to express the intent of the legislators is always an opinionative essay. While avoiding forwardness

of that sort, it still may be said it looks not unlikely that public convenience will be conserved the better by letting passengers take the cars designed and designated for them according not merely to custom, but to what has been found the better way for well-nigh, if not fully, the half a century in which cars have been run on short runs to accommodate traffic in the more frequented portions of routes, to the relief of passengers and lessening of crowding upon the long runs. However those presently exploiting them have come by the franchises for carrying passengers, they were granted, it must be assumed, for public benefit. The very name "rapid transit," far older than the act of 1875 first so named, more than suggests the desire, amounting to popular craving, for swift transportation, impeded as little and as seldom as it may. It is essential, as said in our court of last resort, to the convenient and useful working of the property that there be no unnecessary stoppage of regular transit at a rate of speed continuously kept up, and it is incumbent upon the passenger that he cause no unnecessary hindrance thereto.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.