(52 Misc. Rep. 585)

KELLY v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term.   February 11, 1907.)

CARRIERS—STREET RAILROADS—TRANSFERS—CHANGE OF DIRECTION.

Under Railroad Law, Laws 1892, p. 1406, c. 676, § 104, requiring every street railroad company to carry, between any two points on the roads over which it has the right to run, any passenger desiring to make one continuous trip between such points for one single fare, and without extra charge to give a passenger a transfer entitling him to one continuous trip to any point on any such road, to the end that public convenience may be promoted by the operation of the roads embraced in such system substantially as a single railroad with a single rate of fare, one taking a car going south, and from this taking a transfer to a car going west, is then entitled to a transfer on a car going north, without regard to the reasonableness of such a requirement.

MacLean, J., dissenting.

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Peter C. Kelly against the New York City Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

Argued before GILDERSLEEVE, MacLEAN, and AMEND, JJ.

David J. Wagner, for appellant.

James L. Quackenbush, for respondent.

GILDERSLEEVE, J.   The plaintiff appeals from a judgment of the Municipal Court rendered in favor of the defendant in an action brought by plaintiff to recover $50 as a penalty for the defendant's refusal to give him a transfer at Chambers street and West Broadway, which would enable him to travel northerly on defendant's car. The plaintiff boarded a south-bound car of defendant at Bayard street and the Bowery, paid his legal fare, and asked for and received a transfer.   He left the car at Park Row and Chambers street, and boarded a west-bound car on Chambers street.   His place of destination was Leonard street and West Broadway.   On a car going northerly from Chambers street on West Broadway he was refused a transfer, and was obliged to pay another fare to enable him to reach his destination.   The points of the plaintiff's embarkation and destination were both on the railroad, or portions thereof, operated and controlled by the defendant, and were within the limits of the borough of Manhattan, city of New York.   The plaintiff made one continuous trip between the aforesaid points.

The only question to be determined on this appeal is whether or not the defendant corporation improperly refused the desired transfer to the northerly point of the route, and thereby incurred the penalty provided by section 104 of the railroad law (Laws 1892, p. 1406, c. 676).   In rendering judgment for the defendant the learned court below stated that he had already decided the questions involved in this case in favor of the defendant in another case, and until that decision is overruled he should adhere to it.   The particular case referred to has not been brought to our attention, and we are ignorant of the

grounds upon which that decision was based.   Moreover, in the decision rendered in the case at bar no grounds are set forth.   We assume, however, that in construing section 104, relating to the company's obligation to grant transfers to passengers, the court considered the meaning of the words in said section, "to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract subtantially as a single railroad, with a single rate of fare," as a legislative intimation that certain transfers, including those asked for under the circumstances in which one was demanded by the plaintiff herein, would not be required in seeking to promote the public convenience.   The statute under consideration provides as follows, viz.:

"Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger.   Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare."

It will be observed that the language of the statute is "every such corporation shall carry between any two points."   And, again, "shall upon demand and without extra charge give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract" (referring to contracts of lease).   The rights of the plaintiff rest upon the contract made with defendant when he pays his fare. Dunphy v. Erie Ry. Co. 42 N. Y. Super. Ct. 128.   When the passenger pays for the right to ride upon the defendant's railroads, it is upon an agreement between the parties that he shall have a continuous ride for the one fare to his point of destination.   Such a ride under the circumstances disclosed in this case was guarantied to the plaintiff by the statute.

We are unable to find legal support for the defendant's claim that it is its right to impose a limitation upon the giving of transfers by refusing them to passengers desiring to continue their journey upon lines not running in the same longitudinal direction.   It is the contention of the defendant that:

"When a trip becomes southerly it shall not thereafter become northerly, and vice versa, without the payment of an additional fare."

We think such a rule is a violation of the statute.   It is not an excuse to show that such a rule is necessary to prevent a fraudulent use and abuse of defendant's transfer system.   The question of the reasonableness of such a rule and its effect upon the defendant's earnings afford no support for said contention.   The reasonableness of the rule is not involved here.   The statute gives to the public specifically and in unmistakable language the right to "one continuous trip to any point or portion of the roads."   The application of ordinary intelligence to the consideration of this question indicates at once to an impartial mind an unobscured and definite meaning in the words of the statute.   We

have no right, under the claim of construction, to add to or take from that meaning. The court says, in the case of Tomkins v. Hunter, 149 N. Y. 122, 43 N. E. 534:

"In construing statutes it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction."

In the case of People v. Woodruff, 32 N. Y. 355, the court says:

"It is always competent for the Legislature to speak clearly and without qualification, and it is safer for judicial determination to follow the plain intent and obvious meaning of an act, rather than to speculate upon what might have been the views of the Legislature in the emergency that may have arisen."

In the case of Matter of Miller, 110 N. Y. 216, 18 N. E. 139, where it was contended that the reason and equity of a statute drew within its operation certain parties not mentioned in it, it was said:

"If that be so, it constitutes no reason for controlling its language, although it might seem that the Legislature would have provided for such a case, had their attention been directed to it."

The case of O'Reilly v. Brooklyn Heights Ry. Co., 179 N. Y. 450, 72 N. E. 517, fully sustains the proposition that the defendant company, upon the facts established in the case at bar, or facts disclosing a similar situation, is under an obligation to transfer passengers over all of the roads operated by it for a single fare, if it be necessary to enable the passenger to make a continuous trip between any two points on its lines.

Again, in Jenkins v. Brooklyn Heights Ry. Co., 29 App. Div. 13, 51 N. Y. Supp. 220, the court says:

"The law of the state requires these transfers to be given, and makes no other limitation than that the passenger shall desire to make one continuous trip."

We consider it highly probable that, could the practical operation of the statute in question have been foreseen, and the attention of the Legislature directed to the burdens that some of its provisions impose upon the railroad companies, different language would have been used in the enactment. We have carefully examined the transfer system now in operation by defendant, and consider it comprehensive and generous. In our judgment it is calculated to, and does in the main, promote public convenience to an extent commensurate with the equitable rights of the passenger and the carrier. We can, however, see no relief for the defendant, except in additional legislation.

For the reasons stated, the judgment must be reversed, and, since the facts are undisputed, judgment is given for the plaintiff, as demanded in the complaint, with costs. As the question involved is one of great importance, the defendant company may have leave to appeal to the Appellate Division.

AMEND, J., concurs.

MacLEAN, J. (dissenting). Literalness is the touchstone of the appellant and those with him making common cause. The sole signif-

icance accorded by common consent to the expression "any two points" in section 104 of the Railroad Law, Laws 1892, p. 1406, c. 676 (in all else voluminously shown disputable), seems to be that a passenger may not ask to be taken just home again to his starting point. He may ask, though, say the literalists, to be let out next door to it, no matter soever how many be the points, the routes, and the directions lying helter skelter between. This literal view of "one continuous trip between such points" seems unlikely to occur upon perusal to a person of ordinary understanding, the first arbiter of the use of the words in their common meaning. Of this it is significant that it has been rejected by each of the seven experienced justices to whom it was presented in the Municipal Court, who in their function come into personal contact with a far larger number of persons than commonly do the justices of this tribunal and have greater opportunities for arriving at the expectable acceptance of words in common use. It is unnecessary to go back to Dwarris to learn, or to cite cases to show, that the literal sense of terms yields to their reasonable construction. In this statute that literal sense of "any two points" is qualified by other terms, "continuous trip," "substantially as a single railroad," and "with a single rate of fare," or "for a single fare." The phrase "continuous trip," or "continuous passage," made familiar by practically all railroad tickets, not excursion, is too well understood to be distorted into an endless journey, to and fro, around and around, the livelong day or night, or both, as some might be fain to make out because of having home housings too hot or too cold, or because of having no housings at all. Its acceptation by travelers and by carriers is transportation of a person journeying in one direction according to the usual demands of the public, and not the unusual demand of the sporadic person. The reasonable limitation of the literal sense to a general direction is accentuated by the comparison "as a single railroad with a single rate of fare," since, as is well known, in ordinary, as distinguished from excursion, traffic, passengers are not carried, so to say, there and back, without tickets securing the right of a return journey—tickets compensated for by an occasion of an unusual number of passengers or by an extra rate of fare for the round trip.

Passing by the fact that the statute mentions merely a transfer for a single fare, and not the succession of transfers assumedly granted, it remains to note that the salient objection to the extreme view of "any two points" is the anomalous character of the legislation, if read in the literal sense imputed to it by the appellant and consorts. It is commonplace to say that the Legislature of this commercial state, with its presumptive knowledge of the incidents involved and presumably purposing the consequences of its act, hardly, for the sake of the relatively rare person actually desiring for trade or pleasure, nor for a penalty, to continue his or her trip backward, would intend to exempt a portion of the great business of transporting passengers in its incorporated cities and villages from the carrier's control, to lay upon the carrier the necessity of carrying passengers over extended tours, with repeated stopovers at each intersecting point, for the compensation of a single fare, or for the payment of no fare at all, to make compulsory conveyance of passengers upon transfers obtained by subterfuge, and so to promote

the abuses of illicit trading in transfers and for the knocking down of fares, to expose the surface railroads to almost open cheating by crooked passengers and traders and employés. Casual observation by the unconcerned citizen, riding up and down and waiting at points of intersection, shows sufficiently that such abuses, now existing, would be multiplied indefinitely. No evidence is offered by the appellant to contradict that introduced in such behalf by the respondent to emphasize this conclusion from easy observation, not gainsaid or questioned. Commercial as we are, if the carrying companies are to forego some of their legalized profits, the profits to be foregone should go to the benefit, not of pilfering passengers, or traders, or employés, but of the public, through taxation or percentages upon earnings (according to the several franchises and charters), payable to the state and to the municipalities, and collected.

The judgment should be affirmed, with costs.

James L. Quackenbush, for respondent.

