PEOPLE v. ALBION CIDER & VINEGAR CO. et al.

(Supreme Court, Appellate Division, Fourth Department.  July 6, 1909.)

1. REFERENCE (§ 58*)—PROCEEDINGS—AMENDMENT OF PLEADINGS.

A referee appointed, under Code Civ. Proc. § 1013, for the trial of issues, has the same power a court has to permit an amendment of a pleading upon the trial as provided by section 723, by conforming it to the facts proved.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 89, 90; Dec. Dig. § 58.*]

2. REFERENCE (§ 58*)—PROCEEDINGS—AMENDMENT OF PLEADINGS.

An amendment of a complaint upon the trial, the effect of which is to separately number and state in appropriate counts the several causes of action alleged in gross, and the excision of unnecessary matter, is proper and within the power of the referee.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 89, 90; Dec. Dig. § 58.*]

3. FOOD (§ 16*)—PENALTIES.

Evidence *held* sufficient to warrant a finding that vinegar in barrels marked "pure cider vinegar" was adulterated by the addition of artificial coloring matter in violation of Agricultural Law (Laws 1893, p. 667, c. 338) §§ 50–52.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

4. FOOD (§ 16*)—PENALTIES.

For marking as "pure cider vinegar" barrels containing artificial coloring matter, in violation of Agricultural Law (Laws 1893, p. 667, c. 338) §§ 50–52, cumulative penalties are recoverable under section 53, imposing a penalty for "each" violation, though the barrels are sold or kept for sale as a single lot.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 16.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Orleans County.

Action by the People of the State of New York against the Albion Cider & Vinegar Company and others.  From a judgment for plaintiff, defendants appeal.  Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

James M. E. O'Grady, for appellants.
Thomas C. Burke, for the People.

ROBSON, J.  Defendant the Albion Cider & Vinegar Company is a domestic corporation engaged in the manufacture and sale of cider and vinegar at Albion, N. Y.  The other defendants in the order in which they are named in the title to the action are, respectively, the president and general manager, and the manager having immediate charge of the plant, of the corporation.  The action was properly brought and prosecuted in the name of the people by the officers who are clothed with appropriate authority for that purpose.  The judgment recovered is made up of 15 separate penalties of $100 each for keeping for sale at specified dates "one certain barrel of adulterated vinegar, as and for cider vinegar, which had been theretofore manu-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

factured for sale by said defendants and which contained artificial coloring matter, was a product in imitation or semblance of cider vinegar and which was not made exclusively from pure apple juice," and for marking or branding "as and for cider vinegar said certain barrel containing such adulterated and imitation vinegar by branding the same with the words 'New York State Pure Cider Vinegar,' all in violation of sections 50, 51, and 52 of the agricultural law (Laws 1893, p. 667, c. 338)."

Defendants urge that the referee erred in allowing an amendment of the complaint, which permission was given on an application made at the final submission of the case. Defendants insist that the application should have been denied for laches. The right to make application for amendment of the pleadings was expressly reserved by stipulation. If the referee had the power to grant the amendment, the application was made in time. The referee, of course, had the same power a court has to permit an amendment of a pleading upon the trial of the action. Code Civ. Proc. § 1013. This includes the power to amend a pleading by conforming it to the facts proved, where the amendment does not substantially change the claim or defense. Code, § 723. The original complaint charged defendants with manufacturing for sale and keeping and offering for sale adulterated vinegar, and with falsely branding such vinegar as "Pure Cider Vinegar." As a part of such vinegar, the complaint referred specifically to the 15 barrels from which the 15 samples in question were taken and referred to each sample by its appropriate number. The complaint as amended separately stated and numbered as separate causes of action a violation of the statute in regard to each of these 15 barrels, with two counts for each. No fact is stated in the amended complaint, and no cause of action therein alleged, which do not appear in the original complaint. Probably it was unnecessary to amend the original pleading, as a recovery on a complaint identical in form with this, mutatis mutandis, was sustained by this court, and later by the Court of Appeals. People v. Niagara Fruit Co., 75 App. Div. 11, 77 N. Y. Supp. 805, affirmed 173 N. Y. 629, 66 N. E. 1114. In any event, the effect of the amendment was simply to separately number and state in appropriate counts the several causes of action alleged in gross in the original complaint, and an excision therefrom of much extraneous and unnecessary matter. The amendment was proper, and within the power of the referee to allow, as he did.

Much of appellants' argument is expended in an effort to show that plaintiff failed to prove that the vinegar in these 15 barrels was adulterated within the meaning of the statute. The finding of the referee is that the vinegar in each barrel "contained artificial coloring matter, was a product in imitation or semblance of cider vinegar, and which was not made exclusively from pure apple juice." Appellants urge that there is no proof, or not sufficient proof, that the vinegar contained artificial coloring matter, and that, if there is any evidence that 'it' contained other substances than pure apple juice, these are accounted for by a possible addition of water, containing, perhaps, no more than the normal amount of sodium, etc., ordinarily found in water recognized, or usually considered, as pure. They further say that the addition

of water to an extent which does not reduce the percentage of acetic acid below the statutory requirement is not a violation of the statute. People v. Heinz Co., 90 App. Div. 408, 86 N. Y. Supp. 141. Much of the evidence as to the results of the different tests made indicates only the addition of water. But, even if we are 'bound to accept the doctrine that the addition of water without explanation of the propriety or necessity of such addition is not an adulteration within the statute, there is, I think, sufficient evidence that each barrel of vinegar in question did contain artificial coloring matter of some kind, and that the vinegar for that reason alone was adulterated, and not cider vinegar within the definition of the statute. Two recognized tests for artificial coloring matter appear to be the Fuller's earth test, and the acetate of lead test. Each of these was applied by the witness Hill to samples examined by him, and he testifies that they disclosed the presence of added coloring matter. The other chemist, Miller, who examined eight other samples, says the vinegar was artificially colored. It is true he made the Fuller's earth test on only one of the samples examined by him, and that disclosed such coloring. But his examination of the other samples by the acetate of lead test showed results which clearly indicated, as shown by Hill's and Mosher's testimony, results and conditions that would be accounted for by the presence of added coloring matter. In view of the evidence of the people's chemists that such coloring matter had been added, and of the somewhat evasive and unsatisfactory evidence of defendant's chemist that he found none he identified, the evidence of defendant Doyle, limited as it was to a statement that no injurious or deleterious matter had been added, taken in connection with the failure to call defendant's employés to testify as to the composition of the vinegar, and expressly that no coloring matter had been added, I think the finding of the referee as to that fact was correct.

Defendant also claims that, at most, only two penalties of $100 each could properly have been imposed, because there were but two lots of barrels inspected, which were on sale, had been sold, or offered for sale. I recognize the universal distaste of the courts to an award of cumulative penalties. But, if the statute clearly shows an intention that a penalty can be recovered for each offense, I understand the courts will still enforce them. Suydam v. Smith, 52 N. Y. 383–388. It is true that the opinion of the court in Griffin v. Interurban St. Ry. Co., 179 N. Y. 438, 449, 72 N. E. 513, contains an expression which might almost be interpreted to mean that a recovery of successive penalties could only be permitted under the present interpretation of statutes prescribing penalties when the law in so many words declared that the recovery by the same plaintiff of successive or cumulative penalties is allowed. I do not think, however, it has yet been held that, where the statute by other apt words shows the intention to create a liability for each infraction of the statute, the recovery of cumulative penalties is precluded. It will be observed that the recovery here is for false branding or marking each of 15 barrels of vinegar. Such false marking of a package is declared a violation of the statute. And a penalty of $100 is prescribed "for each violation." Section 53, c. 338, p. 668, Laws 1893. It would seem from

118 N.Y.S.—2

the distinction sought to be drawn in the use of words prescribing a penalty for violation of a statute that, if the word "each" instead of the word "every" had been used in the statute under consideration in the case last referred to, a different conclusion might have been reached by the court. Griffin v. Interurban Ry. Co., 180 N. Y. 538, 72 N. E. 1142. In any event, I think we must for the present, at least, hold that cumulative penalties are recoverable under this statute. In the case of People v. Niagara Fruit Co., supra, there was a recovery of two penalties for two separate sales of adulterated vinegar and eight penalties for falsely marking eight packages included in these sales.

It is true this question is not discussed in the opinion in this court; but that it was at least a matter of consideration by the learned referee who heard that case appears from the following extract from his opinion then delivered:

"In my opinion the act of manufacturing and selling as 'cider vinegar' adulterated vinegar which simulated cider vinegar, but was not cider vinegar, constitutes but one offense in the case of each shipment, for the reason that each transaction was an entirety. The marking of the barrels 'cider vinegar,' however, seems to be a distinct offense under the statute, and the marking of each one is a separate offense."

This was followed by an award of separate penalties for each offense.

The recovery of judgment against the individual defendants, who occupied, as to the defendant corporation, relations practically the same as the individual defendants did in the Niagara Fruit Co. Case, is warranted under the holding in that case.

Judgment affirmed, with costs. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). This appeal squarely presents the question: Is the plaintiff entitled to recover cumulative penalties, 15 in number, of $100 each, for violation of the agricultural law under the facts and circumstances disclosed by the evidence in this case? It is uncontradicted that on the 3d day of September, 1901, the defendants had in their factory or warehouse 75 barrels of vinegar which they had manufactured. Such 75 barrels were stored all together as one lot, and on the date aforesaid had all been sold to the Eimon Mercantile Company of West Superior, Wis., through an agent of defendants who resided in Detroit, Mich. On the following day (September 4, 1901) all of said 75 barrels were shipped to said purchaser. On the 3d day of September, 1901, the agents or inspectors of the plaintiff went to the factory of the defendants, and took samples of vinegar from each of 9 barrels, selected at random from said lot of 75 barrels, and the analysis which was made of the samples taken from each of such 9 barrels indicated that the vinegar contained therein was adulterated, and it was so found by the learned referee. Each of said 75 barrels, as well as the 9 barrels from which the samples were taken and analyzed, were branded, as found by the referee: "New York State Pure Cider Vinegar." We will assume that the vinegar contained in the 9 barrels from which samples were

taken and which were analyzed, as found by the referee, contained adulterated vinegar, and it must follow that the whole of the 75 barrels contained exactly the same kind of vinegar, because the 9 barrels were selected, as before said, at random and to indicate the character of the vinegar contained in the 75 barrels, which constituted a single lot and were stored together, and had, as we have seen, all been sold as one lot to the Wisconsin firm or corporation, and was delivered to such concern on the day following the taking of the samples by the agents or inspectors of the plaintiff.

The referee has found that the defendants are liable for a penalty of $100 for each barrel of such vinegar, 9 in all, which contained, as found and as we will assume was the fact, adulterated vinegar and was put in such 9 barrels, each branded as above stated. It is also uncontradicted that on the 24th day of September, 1901, the defendants had in their possession and in their factory or warehouse a lot of vinegar, comprising 63 barrels, all being stored on the floor together and making a single lot. There is no evidence which tends to show that such lot of 63 barrels of vinegar had been sold, offered for sale, or even ready for sale, except as a single lot. But such 63 barrels were in the factory or warehouse of the defendants, all together, on the 24th day of September, 1901, and on that day the agents or inspectors of the plaintiff went there and selected from such lot of 63 barrels samples from 6 barrels. Upon analysis of such six samples, the referee has found that each contained adulterated vinegar within the provisions of the agricultural law, and that each of such barrels were branded as were the others, "New York State Pure Cider Vinegar," and upon those facts the referee awarded to the plaintiff a penalty of $100 each for such 6 alleged violations, which, together with the 9 above referred to, made 15 penalties of $100 each, aggregating $1,500, the amount of the judgment awarded against the defendants. I think, at the most, only two penalties of $100 each should have been recovered by the plaintiff—one because of the 75 barrels which it sold to the Wisconsin concern and one because of the fact that the defendants had a lot comprising 63 barrels of vinegar in their possession which was adulterated, but which had not been sold or offered for sale. It seems to me that the facts relating to the first 75 barrels, 9 of which were selected to test the quality of the entire 75 barrels, and which were found to contain adulterated vinegar, only constituted a single transaction and a single violation of the agricultural law, and that the same is true of the lot of 63 barrels, 6 of which were selected at random by the agents or inspectors of the plaintiff, although such 63 barrels had not been sold or offered for sale, so far as appears by the evidence, except as a single lot. It does not seem possible that it was intended by the Legislature in passing the agricultural law that the agents or inspectors of the state should have discretion to impose a single penalty of a hundred or more upon a manufacturer of vinegar, depending only upon the number of barrels in any lot from which they might determine to take samples for analysis.

In the case at bar there were 138 barrels of vinegar all told. Is it possible that, under the provisions of the agricultural law, the agents

of the state might, if so inclined, have taken samples from each barrel, analyzed the same, and, if found to be the same as the samples taken which concededly were adulterated, thus lay the basis for imposing a fine of $13,800 against the defendants? I do not think that it was the intention of the Legislature to place such discretion in the agents or inspectors of the state employed under such agricultural law. Of course, if they were authorized to take samples from and analyze one barrel of vinegar out of the 75 barrels, or one barrel of the 63 barrels, and make such analysis the basis of recovery as for a single barrel, they were equally authorized to take such sample from each one of the 138 barrels, and make the analysis of them the basis of a penalty of $100, which, as we have seen, would in this case amount to $13,800. I think the law was directed against specific transactions; in other words, to prohibit the manufacturer from selling to a purchaser a particular quantity or lot of adulterated vinegar, no matter how the same was put up or branded. In the first case disclosed by the evidence the defendants had sold 75 barrels of vinegar. Samples had been taken from 9 barrels which disclosed, we will assume, that the vinegar contained in such barrels was adulterated. Is it possible that the agricultural law was framed in such fashion so that, if the contents of 75 barrels from which the 9 were selected for the purpose of analysis had been placed in one hogshead or tank, and branded as "New York State Pure Cider Vinegar," only one penalty could be recovered, but that because it was divided up and placed in barrels, each of which was so branded, 75 penalties could be recovered? It seems to me that the proposition is absurd.

The same suggestion is pertinent as to the lot of 63 barrels. It all constituted one lot, was in the warehouse or factory together. It was there all alike for the purpose of sale or otherwise. It does not seem to me to be possible that the Legislature intended that the agents of the state should be clothed with the power of determining whether the manufacturer of such vinegar should be liable to a penalty of $100 for each of such barrels, depending only upon their discretion as to how many of the same they should take samples from and analyze. The extreme of the proposition is illustrated by the suggestion that if the defendants had put 138 barrels of vinegar in packages containing a gallon each, and the agents of the state had taken samples from and analyzed each of such packages, we would have a judgment here of over $43,000 against the defendants. I do not believe it was intended by the Legislature to clothe the agents or inspectors of the state, appointed under the agricultural law, with such discretion as would enable them to determine whether a manufacturer of vinegar should be liable for one penalty of $100 or of 1,000 or more of such penalties, and in such an amount as might mean ruin to any manufacturer of vinegar.

It seems to me that, under the fair interpretation of the agricultural law, the defendants, at most, were only liable to two penalties of $100 each, one for having sold the lot of 75 barrels to the Wisconsin concern, and the other for having in its possession the 63 barrels which had not been sold or offered for sale, and that if a manufacturer makes a quantity of adulterated vinegar in violation of the

statute, sells it as one lot and in one transaction, he is only liable for one penalty, no matter how many barrels or packages he may employ to transport such vinegar to the purchaser, and also that if a manufacturer makes a lot of adulterated vinegar and stores it all together, which is conceded to be of the same character, and puts it into 63 different barrels for storage, and such barrels falsely indicate that the contents of each is pure cider vinegar, when, in fact, it is adulterated, he is not liable for 63 distinct penalties because of such transaction. Of course, in such case, if he had sold one of the barrels of vinegar to one party and another to another and still another to a third, he would be liable for three penalties; but, in case he had sold three barrels to each of such three parties, he would only be liable for three penalties.

I think that the decisions of the Court of Appeals are decisive of the question here involved. Cox v. Paul, 175 N. Y. 328, 67 N. E. 586; Sturgess v. Spofford, 45 N. Y. 446; Whitaker v. Masterton, 106 N. Y. 277, 12 N. E. 604; Washburn v. McInroy, 7 Johns. 134; Fisher v. New York Central & Hudson River Railroad Company, 46 N. Y. 644; U. S. Condensed Milk Company v. Smith, 116 App. Div. 15, 101 N. Y. Supp. 129; People v. Buell, 85 App. Div. 141, 83 N. Y. Supp. 143; and the noted case of United States v. Standard Oil Company of Indiana (C. C. A.) 164 Fed. 376. The decisions in all of these cases and in others to which attention might be called is to the effect that cumulative penalties may not be imposed except the language of the statute clearly and unmistakably indicates that such was the intention of the Legislature. The sections of the agricultural law (50, 51, and 52) in my opinion are not susceptible of such construction under facts such as are shown to exist in this case.

I therefore conclude that the plaintiff was only entitled to recover two penalties, or a judgment for $200, and that, therefore, the judgment appealed from should be reversed and a new trial granted, with costs to appellant to abide event, unless the plaintiff stipulates that the judgment be reduced to $200, in which event the judgment in that amount should be affirmed, without costs.