## Commonwealth v. Johnson et al.

*Edwin P. Young* and *William P. Wilson*, for Commonwealth.

*John P. Vallilee*, for defendants.

CULVER, P. J., January 20, 1941.—This is an appeal from a summary conviction before a justice of the peace. Defendants are charged with various violations of the law relating to taking and trapping fur-bearing animals.

A complaint charges that "on or about the 22nd day of December, 1940, in the Township of Terry and County of Bradford, the two defendants did wilfully, unlawfully and maliciously unroof and destroy one hundred thirteen muskrat dens and houses and set steel traps within five

feet from each of said dens and houses, not being under water sets, to-wit: Within each of the said dens and houses so destroyed, and at the same time and place have one hundred thirteen steel traps set to catch and kill the said muskrats in the said dens and houses. The said muskrats being fur bearing animals and which dens and houses were the dens and houses, each occupied as the home of living muskrats, said fur bearing animals and at least four of the said traps were tagged with the name and address of Thomas Johnson, Wyalusing, Pa. R. D. 3, and seventeen of the said traps were tagged with the name of Bruce Campbell, Wyalusing, Pa., and at least nineteen of said traps were without any tags attached thereto, and that all of the foregoing were upon the lands and swamp of M. H. and G. H. Welles Lumber Company, and all in Terry Township, Bradford County, Pa. All of which is in violation of the Act of the General Assembly of this Commonwealth in such case made and provided, approved the third day of June, 1937, P. L. 1225, as amended by Act approved the 24th day of June, 1939, P. L. 810, and acts of assembly in such case made and provided."

Defendants move to quash and dismiss the proceeding upon the ground that no violation of the law is set forth in the complaint, they taking the position that, unless muskrats were taken or killed by such illegal devices, no offense was committed.

We believe this position untenable. The purpose of the law is to protect fur-bearing animals, in this case muskrats, from injury by the illegal methods forbidden by the statute. In our opinion, the setting of steel traps, not under-water sets, within the houses or dens of muskrats are violations of the act, even though the offender be discovered and apprehended before any animal is caught in such traps. In this case the evidence shows that at least three muskrats were caught and held by the traps at the time the game protector apprehended defendants on December 22, 1940, and that each of said muskrats was liberated by the game protector. The evidence also shows

that 113 muskrat houses or dens had been dug out and opened, and the tops removed, anchor sticks placed therein, to each of which traps, in a number of instances not tagged, were attached and set within the dens or houses in the nests and above the water. The evidence further shows that of the 113 traps set within such muskrat dens or houses, more than half of them were set within the nests and above the water. The evidence further shows that of the traps so illegally set at least 19 were without any tags attached thereto.

Defendants admit that the setting of the untagged traps was a violation of the law, but allege that, however many traps were so illegally set, it constitutes but one offense and but one penalty can be imposed therefor.

Defendants likewise contend that, notwithstanding the evidence discloses that 113 muskrats' houses or dens had been dug into, practically destroyed, it constitutes but one offense and but one penalty can be imposed.

Defendants likewise contend that, notwithstanding about half of the 113 traps, to wit, at least 56 of them, were set within five feet of the houses or dens and were not under-water sets, yet it constitutes but one offense and but one penalty can be imposed.

The evidence discloses and it is of common knowledge that each muskrat house or den is a separate and distinct habitation. Thus the 113 houses or dens involved in this case constituted the 113 separate and distinct homes of muskrats, and we are of opinion that the destruction or digging into of each constitutes a separate offense, and likewise that the setting of each or trapping within such individual dens constitutes a separate offense, and that each trap so set, which was not properly tagged as required by law, also constitutes a separate offense.

However, The Game Law of June 3, 1937, P. L. 1225, as to some of these questions is not so clear as it might be, and, therefore, we have decided in final sentence in this case to impose but one fine for each violation of the law

by digging into and injuring each of the 113 dens or houses. . . .

The Game Law, supra, provides a fine of $10 for each offense, and, as before stated, we interpret the violation of the law, with reference to each individual muskrat house or den, a separate and distinct offense.

Defendants' counsel, as we have mentioned, contends that there can be but one fine imposed for all the violations in this case and cites in support thereof Friedeborn v. Commonwealth, 113 Pa. 242, and other cases construing the Sunday law. We think there is a marked distinction between the Sunday law and the criminal acts complained of in this case. The aim of the Sunday Act is to prevent a violation of the Lord's Day. It is not the act performed that is illegal, but it is the time when it is performed that is illegal, and whether the performance of the act or series of acts occupies one minute or one hour of the full 24 hours of the day, it is a violation of the one day, Sunday, and as there are no fractions of a day considered, unless expressly so provided by law, however many acts are performed on Sunday, there is but one violation.

In the case of People v. Albion Cider & Vinegar Co. et al., 118 N. Y. Supp. 15, the court held:

"For marking as 'pure cider vinegar' barrels containing artificial coloring matter, in violation of Agricultural Law . . . . cumulative penalties are recoverable under section 53, imposing a penalty for 'each' violation, though the barrels are sold or kept for sale as a single lot."

However, if a person commits a dozen larcenies in a single day, each may constitute a separate and distinct offense. The 113 muskrat houses involved in the instant case constitute a muskrat village, and as each house is separate and distinct from the other, and each is occupied by a separate and distinct family, we believe the digging into each separate house constitutes a separate offense, just as much as would be the case if a person visited a village and broke and entered several different homes, in

which case each individual home entered would constitute a separate offense. If we are correct in this, then the breaking and entering into 113 different muskrat homes scattered over an area of ten acres of land, as the evidence discloses, would constitute separate and distinct offenses.

In Friedeborn v. Commonwealth, supra, Mr. Justice Gordon said (p. 245) :

"The Act of 1794 imposes but one penalty; a fine of $4 for the violation of the Sabbath day, and as in law, unless otherwise provided by the legislation, there are no fractions of a day, it is clear that by the same person there can be but one such violation, and consequently but one fine."

Construing the Act of April 9, 1760, 1 Sm. L. 227, sec. 7, forbidding the shooting at or killing with a firearm any pigeon, dove, partridge, or other fowl in open streets of the City of Philadelphia, "upon the forfeiture of forty shillings for every such offence, to be convicted in manner aforesaid", the Supreme Court in Commonwealth v. Borden, 61 Pa. 272, in an opinion by Justice Agnew, said (p. 277) :

"The next objection is the multiplication of the statutory fine by the number of the birds shot at and killed; and not by the number of distinct acts of shooting. The 7th section of the Act of 9th April 1760, enacts, 'That no person whatsoever shall presume to shoot at or kill with a firearm any pigeon, dove, partridge or other fowl, in the open streets of the city of Philadelphia or in the gardens, orchards and enclosures adjoining upon and belonging to any of the dwelling-houses within the limits of the said city, or suburbs thereof, or any of the boroughs or towns within this province, upon the forfeiture of forty shillings for every such offence, to be convicted in manner aforesaid.' We agree with the defendant that the act of shooting with a firearm is the dangerous offence intended to be prohibited, whether the party shoots at and misses the bird, or shoots and kills it, and the penalty is there-

fore to be measured by the number of shots, and not the number of birds killed. Many birds might be killed at a single shot"; thereby holding that where a person fired several shots on the same day each shot constituted a separate offense.

Section 603 of The Game Law, supra, as amended by the Act of June 24, 1939, P. L. 810, sec. 1, upon which the instant case is founded, provides:

"In the taking or killing of fur-bearing animals or predators it is unlawful to set traps closer than five feet from any hole or den which may be occupied by a fur-bearing animal or predator . . ."

The unlawful act is the setting of a trap within five feet of a den, and certainly the trap must be set before there can be any taking or killing by the trapper. We think the provisions of the act apply to the occupation of trapping for fur-bearing animals by prohibiting certain acts which are declared to be illegal, to wit, setting of a trap within five feet of a den. This, we believe, is the gist of the act, and each setting of a trap within five feet of a separate and distinct den constitutes an offense, and the statute provides, as a penalty, a fine of $10 for "each offence".

If, as held in Commonwealth v. Borden, supra, the firing of four shots constitutes four separate offenses, certainly the setting of four traps within five feet of four separate and distinct dens would constitute four offenses, and likewise the setting of 56 traps, each within five feet of a separate and distinct den, would constitute 56 offenses, and likewise if it be an offense to dig out one muskrat den, it would be 113 offenses to dig out 113 separate, distinct, individual, and disconnected muskrat dens.

## Verdict

And now, to wit, January 20, 1941, after due and careful consideration, the court finds defendants, Thomas Johnson and Bruce Campbell, each guilty of violations of article VI, sec. 603, of The Game Law of June 3, 1937,

P. L. 1225, as amended by section 1 of the Act of June 24, 1939, P. L. 810, by having set 56 traps, not under-water sets, closer than five feet from each of 56 muskrat dens for the purpose of taking fur-bearing animals, to wit, muskrats; also in having dug into and destroyed 113 muskrat dens; also in having set for the purpose of taking fur-bearing animals 19 traps that were not identified by tags bearing the owner's name and address as required by the act of assembly.

*Sentence*

And now, to wit, January 20, 1941, the court sentences defendant Thomas Johnson and defendant Bruce Campbell to each pay the costs and a fine of $10 for each of the 113 violations of the law in digging into 113 muskrat dens, making a total fine of $1,130, and the court suspends the imposition of sentence on the other violations of which they stand convicted and places them upon probation upon condition that they pay the fine and costs imposed or serve in the county jail one day for each dollar of such fine. An exception is noted for each defendant and a bill sealed.